# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### ABERDEEN DIVISION

| | | |
|---|---|---|
| **RACHEL HARRIS, GUARDIAN OF** | ) | |
| **STEVEN JESSIE HARRIS ON BEHALF** | ) | **PLAINTIFF** |
| **OF STEVEN JESSIE HARRIS** | ) | |
| | ) | |
| | ) | |
| **V.** | ) | **CAUSE NO: <u>1:18cv167-SA-RP</u>** |
| | ) | |
| **CLAY COUNTY, MISSISSIPPI, FORMER** | ) | |
| **SHERIFF LADDIE HUFFMAN, IN HIS** | ) | |
| **INDIVIDUAL AND OFFICIAL CAPACITIES,** | ) | |
| **SHERIFF EDDIE SCOTT, IN HIS** | ) | |
| **INDIVIDUAL AND OFFICIAL CAPACITIES,** | ) | |
| **EDDIE SCOTT, IN HIS INDIVIDUAL** | ) | |
| **AND OFFICIAL CAPACITIES** | ) | |
| **FORMER DISTRICT ATTORNEY FORREST** | ) | |
| **ALLGOOD, IN HIS INDIVIDUAL AND** | ) | |
| **OFFICIAL CAPACITY, FORMER DIRECTOR** | ) | |
| **OF THE MISSISSIPPI DEPARTMENT OF** | ) | |
| **MENTAL HEALTH EDWIN C. LeGRAND, III** | ) | **DEFENDANTS** |
| **IN HIS INDIVIDUAL AND OFFICIAL** | ) | |
| **CAPACITY, TANYA WEST, RN, IN HER** | ) | |
| **INDIVIDUAL AND OFFICIAL CAPACITY** | ) | |
| **THAD BUCK, NANCY STUART, PEARSON** | ) | |
| **LIDELL, JR. and JOHN DOES 1-5** | ) | |

---

## FIRST AMENDED COMPLAINT
### (Jury Trial Demanded)

---

Rachel Harris, Guardian of Steven Jessie Harris (hereinafter "Plaintiff Rachel," "Plaintiff Steven," or collectively "Plaintiffs"), by counsel, and files this his *Complaint* against CLAY COUNTY, MISSISSIPPI, FORMER SHERIFF LADDIE HUFFMAN, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, SHERIFF EDDIE SCOTT, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, FORMER DISTRICT ATTORNEY FORREST ALLGOOD, IN HIS

INDIVIDUAL AND OFFICIAL CAPACITY; MISSISSIPPI DEPARTMENT OF MENTAL HEALTH, EDWIN C. LEGRAND, III, THAD BUCK, NANCY STUART, TANYA WEST, RN, PEARSON LIDELL, JR. and JOHN DOES 1-5 "Defendants", alleges as follows:

## INTRODUCTION

1.　　This is an action brought pursuant to 42 U.S.C. § 1983 to redress violations of Plaintiffs' constitutional rights under the Thirteenth and Fourteenth Amendments of the U.S. Constitution to be free of involuntary servitude without due conviction, to redress violations of their liberty interests under the Due Process Clause of the Fourteenth Amendment, and pursuant to the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12131 et seq., and the Rehabilitation Act (the "Rehab Act"), 29 U.S.C. § 794, to be free of discrimination on account of Plaintiffs' disabilities.

2.　　Plaintiffs seek a Judgment declaring the Defendants' conduct unconstitutional and violative of the ADA and Rehab Act, and an injunction against Defendants' unlawful conduct

3.　　America's prisons have become the new "asylums". Fifty years ago, half a million mentally ill Americans lived in public mental health hospitals. [1] With the advent of new anti-psychotic drugs and policies aimed at saving state budget shortfalls, the trend began for deinstitutionalization of the long-term mentally ill.

4.　　Many states, including Mississippi, allow for state mental health treatment for Incompetent to Stand Trial (IST) detainees. Many states report that the largest category of patients they serve in their hospitals are pretrial defendants who have been found IST. As a result, the majority of state hospitals maintain bed-wait lists of inmates who have been court-ordered or otherwise referred for incompetent to stand trial (IST) services. In most states, these

---

[1] *Out of the Shadows: Confronting America's Mental Illness Crisis* by E. Fuller Torrey, M.D. (New York: John Wiley & Sons, 1997). This material is used by permission of John Wiley & Sons, Inc.

waits are around 30 days, but three states have reported forensic bed waits of six months to a year.[2]

5.      Increasingly, the courts are ruling the wait-listing of these detainees to be illegal. Since January 1, 2014, public agencies and officials in more than a dozen states have been sued or threatened with legal action for violating the constitutional rights of pretrial prisoners (see Appendix A: Litigation Associated with Pretrial Forensic Bed Waits). In Alabama, for example, the American Civil Liberties Union is suing the state mental health commissioner over bed waits that average eight months for unconvicted detainees.[3]

### *Litigation Associated with Pre-trial Forensic Bed Waits*

|  |  |  |  |
|---|---|---|---|
| Alabama | *ACLU v. Taylor Hardin* | October 2016 | Violation of constitutional rights of pretrial inmates who need mental health care by forcing them to wait months for admission to the state hospital |
| California | *Stiavetti v. Ahlin*<br><br>*People v. Brewer*<br>*RE Loveton, et al.* | March 2015<br><br>August 2015<br>February 2016 | Violation of court order that sheriff transfer pretrial prisoners from county jail to hospital in a timely manner; April 2016 court overruled motion to strike complaint<br><br>Violation of constitutional rights of pretrial inmates resulting from lengthy delays in transfer from county jail to treatment<br><br>Upheld appeal that hospital admission for pretrial inmates take place within 60 days of a court's commitment order instead of the four weeks sought by petitioners |
| Colorado | Disability Law Colorado<br><br>*Center for Legal* | April 2016<br><br>April 2012 | Colorado accused of violating federal agreement to reduce inmate evaluation wait times and alleged cover-up by state officials |

---

[2] Fuller D.A., Sinclair E.A., Lamb H.R., Cayce J.D., Snook J., *Emptying the 'new asylums': a beds capacity model to reduce mental illness behind bars.* January, 2017. Treatment Advocacy Center, Arlington, VA, USA; 2017

[3] Id.

| | | | |
|---|---|---|---|
| | *Advocacy v. Bicha* | | Settlement entered by the parties, specifying that the state must evaluate or begin medical treatment of pretrial inmates deemed incompetent within 28 days of the initial court order; in 2015, plaintiffs led a complaint with the court that the order is not being followed |
| Louisiana | *Advocacy Center, et al. v. Kathy Kliebert, et al.* and *Brandon Cooper, et al. v. Kathy Kliebert, et al.* | February 2016 | Violation of constitutional rights and discrimination on the basis of disability resulting from failure to promptly transfer detainees found incompetent to stand trial from jail to hospital for treatment<br><br>The plaintiffs in *Cooper* are individuals who have been adjudicated not guilty by reason of insanity. |
| Maryland | *Powell v. Maryland Dept. of Health & Mental Hygiene* | June 2016 | Plaintiffs languishing unlawfully in jail or other detention facilities waiting for competency evaluation and treatment beds |
| Minnesota | Not yet led | September 2016 | In July 2013, Minnesota enacted a 48- hour rule for hospital admission following a court order for pretrial services. Minnesota Sheriffs' Association and Hennepin County Sheriff are investigating legal options to force the state to follow the law. |
| Nevada | *Burnside, et al. v. Richard Whitley, et al.* | January 2014 | In January 2014, Nevada was placed under a consent decree to provide treatment within seven days.<br><br>Counsel for the plaintiffs alleged that the state was failing to meet requirements of consent decree bed-wait times.<br><br>December 2015 consent decree was modified, and the state was given until April 2016 to meet full compliance. |
| New York | *Beverly Ann Griffin v. The City of New York* | September 2013 | Negligence in the 2013 death of a mentally ill man at Rikers Island |
| Pennsylvania | *ACLU v. State of Pennsylvania* *J.H. v. Dallas* | January 2016 October 2015 | Reached settlement of class action over delays in treatment for defendants with mental illness<br><br>Parties agreed to a settlement and created 120 new "placement options" for hundreds of mentally ill defendants court-ordered into hospital treatment but |

| | | | not being served. |
|---|---|---|---|
| South Carolina | *TRP and KW Class v. Dept. of Corrections* | January 2014 | Parties agreed to a settlement of a 2005 lawsuit regarding the constitutionality of multiple practices involving mentally ill inmates, including extended bed waits for pretrial detainees. |
| Texas | *Disability Rights Texas v. Texas Dept. of Health*<br><br>*Lakey v. Taylor*<br><br>(rehearing) | July 2016<br><br>July 2014 | State is "keeping mentally ill suspects in jail too long" waiting for treatment after being declared incompetent to stand trial. The state previously was sued over this issue in 2012.<br><br>Texas Court of Appeals upheld a district court ruling that pretrial detainees are entitled, under the Texas constitution, to competency services within a "reasonable amount of time" following a court order into treatment. At the same time, the court reversed a district court finding that wait-listing pretrial detainees until beds become available for competency services does not violate their rights to due process. |
| Utah | *Disability Law Center v. Utah* | September 2015 | Violation of constitutional rights resulting from holding pretrial detainees in jails for "unconstitutionally excessive periods of time" while they wait for court-ordered competency services |
| Virginia | *Roxane Adams, Jamycheal M. Mitchell v. NAPHCare Inc.* | May 2016 | Wrongful death and negligence stemming from failure to file necessary competency evaluation paperwork |
| Washington | *Trueblood v. Dept. of Social and Health Services* | May 2016 | Violation of constitutional rights of pretrial detainees resulting from failure to provide competency evaluation and restoration services in a timely manner |

## JURISDICTION AND VENUE

6.  This action arises under the United States Constitution, 42 U.S.C. §1983, 42 U.S.C. § 12132, the laws of Mississippi and common law principles to redress a deprivation under color of state law of Plaintiff's rights, privileges and immunities secured to Plaintiff by said statutes, and by the Thirteenth and Fourteenth Amendments of the United States Constitution. This Court has supplemental subject matter jurisdiction over the pendent state law claims and parties

pursuant to 28 U.S.C. §1367 because the claims and Plaintiff's damages are so related to the Plaintiff's federal law claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred within this district.

### THE PARTIES

7.     Plaintiff Rachel is the legal guardian of Steven Jessie Harris. Plaintiff Rachel is an adult resident of the State of Mississippi. At the time Plaintiff Steven was prosecuted by the then District Attorney, Defendant Former D.A. Allgood, Plaintiff Steven was incompetent/unfit for trial on criminal charges. Since 2005, he has spent virtually eleven (11) years of his adult life behind bars.

8.     Defendant Clay County is a Mississippi County and at all times material herein mentioned has been a public entity and County duly authorized and existing as such in and under the laws of the State of Mississippi; and at all times herein mentioned, Defendant Clay County has possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the Clay County Sheriff's Department and particularly said Department's Patrol, Internal Investigations and Training, Personnel Divisions, Policies and Procedures, and Jail Operations for the care of inmates and other operations and subdivisions presently unidentified to Plaintiff. Clay County may be served with process by and through Amy G. Berry, Clay County Chancery Clerk, who may be served with process at 365 Court Street, West Point, MS 39773.

9.     Defendant Former Sheriff Laddie Huffman, is an adult resident of the State of Mississippi, formerly employed as Sheriff of Clay County at all times relevant herein prior to

August 2017. He may be served with process at his last known place of employment, located at 330 West Broad Street, West Point, MS 39773.

10.     Defendant Sheriff Eddie Scott is an adult resident of the State of Mississippi, employed with the Clay County Sheriff's Department, and he may be served with process at his place of employment, located at 348 West Broad Street, West Point, MS 39773. At all times relevant herein, Eddie Scott was the Sheriff of Clay County.

11.     Defendant Forrest Allgood is an adult resident of the State of Mississippi, formerly employed as District Attorney for Clay County, and he may be served with process at his last known place of employment, located at 220 5th Street North, Columbus, MS 39701 and/or P. O. Box 124, Columbus, MS 39703-0124.

12.     Defendant George Thad Buck is an adult resident of the State of Mississippi, formerly employed as a Clay County public defender by the Clay County Circuit Court to represent Plaintiff Steven, and he may be served with process at his last known mailing address, located at P.O. Box 163 West Point, MS 39773-0163.

13.     Defendant Nancy Stuart is an adult resident of the State of Alabama, formerly a resident of the State of Mississippi, and formerly employed as a Clay County public defender by the Clay County Circuit Court to represent Plaintiff Steven, and she may be served with process at her last known mailing address located at 331 Wildwood Way Somerville, Alabama 35670-3852.

14.     Defendant Tanya West, RN is an adult resident of the State of Mississippi, formerly employed with the Clay County Jail as a Registered Nurse, and she can be served process at her last known place of employment located at 348 Broad St. West Point, MS 39773.

15.     Defendant Edwin C. LeGrand, III is an adult resident of the State of Mississippi, formerly employed as Executive Director of the Mississippi Department of Mental Health, and he can be

served process at his last known place of employment located at 239 N Lamar St, Jackson, MS 39201.

16.     Defendant Pearson Lidell, Jr. is an adult resident of the State of Mississippi, formerly employed as a Clay County public defender by the Clay County Circuit Court to represent Plaintiff Steven, and can be served process at his last known physical address 1890 Pointe Dr. Starkville, MS 39759-7014 or last known mailing address P.O. Box 881 Mississippi State, MS 39762-7014.

17.     John Does 1-5 are unknown actors at this time and may be timely added to an Amended Complaint as identified through the normal course of discovery

**GENERAL ALLEGATIONS**

18.     Plaintiff Steven had a history of suffering from the mental illness of Schizophrenia, which caused delusions and psychotic episodes.

19.     Schizophrenia is a mental disorder characterized by some of the most implausible beliefs that are generally regarded as persistent, systematized, bizarre delusions.

20.     Plaintiff Steven was arrested and charged in Clay County with one count of Murder, three counts of Aggravated Assault on a Law Enforcement Officer, two counts of Armed Robbery, two counts of Kidnapping, two counts of Aggravated Assault, and one count of Shooting into an Automobile, all of which alleged to have occurred on October 8, 2005. Defendant Former Sheriff Huffman fulfilled the order of arrest upon Plaintiff Steven.

21.     Plaintiff Steven was arrested and held in custody of the Defendant Clay County, for one count of Murder, three counts of Aggravated Assault on a Law Enforcement Officer, two counts of Armed Robbery, two counts of Kidnapping, two counts of Aggravated Assault, and one count

of Shooting into an Automobile, from October 8, 2005 and continuing thereafter until his release to a State Hospital in 2017.

22.    An order for a competency evaluation was entered on July 20, 2006, <u>nine months</u> after Plaintiff Steven was taken into custody.

23.    In violation of the July 20, 2006 order for an immediate competency evaluation, as well as in violation of Plaintiff's constitutional rights, the ADA and the Rehab Act, Plaintiff Steven was transferred to Whitfield Hospital <u>one year after the original competency evaluation order</u>.

24.    The first Forensic Competency Summary Report was prepared and filed September 13, 2007.  Dr. McMichael and Dr. Macvaugh, Plaintiff Steven's treating physicians at Whitfield Hospital determined that Plaintiff Steven suffered from Schizophrenia, lacking the ability to consult with his attorney, prepare a defense and understand the nature and object of legal proceedings against him. The medical staff also determined Plaintiff Steven lacked the ability to waive or assert his constitutional rights.

25.    A fourth and final Forensic Competency Summary Report was prepared and filed September 8, 2008 after one year of inpatient treatment at Whitfield Hospital, providing the opinion that "there is no substantial probability" that Plaintiff Steven can be restored to competence to proceed legally in the foreseeable future. At this time **long-term psychiatric placement was recommended** due to Plaintiff Steven's risk for future violence and Plaintiff Steven was remanded to the custody of the Clay County Sheriff.

26.    Miss. R. Crim. Proc. 12.5 provides the trial court *shall* promptly hold a competency hearing after submission of the mental evaluation report.   Miss. R. Crim. Proc. 12.5, enacted July 2017, is based on Uniform Rule of Circuit and County Court Practice 9.06 (hereinafter "UCCCR 9.06") which states that after a forensic evaluation, the court *shall* conduct a hearing to

determine if the defendant is competent to stand trial. Both of these rules were in effect during the time of Plaintiff Steven's incarceration.

27.     Although a competency hearing was initially scheduled for October 14, 2008, counselors continuously agreed to continuances until Judge Howard set the competency hearing for October 12, 2010, two years after Plaintiff Steven was deemed incompetent by mental examination. Plaintiff Steven remained in custody of the Clay County Sheriff during the two years despite the psychiatrist recommendations for long-term treatment.

28.     As a result of the competency hearing, Judge Howard entered an order for District Attorney Forrest Allgood to pursue Civil Commitment proceedings and ordered Plaintiff Steven to remain in custody until determination of civil commitment proceedings.

29.     Eight days after the competency hearing, Judge Howard entered an order to remove the case from the active docket and deemed Plaintiff Steven was "not competent to stand trial and ordered civil commitment proceedings to comply with Mississippi Code Annotated § 41-21-63 (1972)."

30.     On June 23, 2014, Plaintiff Steven filed a hand-written letter with the Clay County Circuit Clerk that alleged he was in "… guerilla warfare with police, raped in jail, conspiracy in murder, they played in court, in my house". Plaintiff Steven's letter requested that the court lock up the police.

31.     With assistance of new counsel, Plaintiff Steven filed a motion to dismiss for lack of speedy trial on August 10th, 2016 in the Circuit Court of Clay County on the grounds that the aforementioned Court violated his constitutional rights by continuing to imprison Plaintiff, a legally incompetent person and unconvicted person under purported color of law.

32.     Plaintiff Steven was wrongfully imprisoned for approximately eleven years and released on August 15, 2017.

33.     Though Plaintiff Steven has finally obtained his freedom, he will never regain the lost decade of his life, a decade stolen from him by the Defendants. Because he was unfit to stand trial at the time of his arrest, Defendants robbed Plaintiff Steven of 11 years of his adult life.

34.     Clay County, by and through its Jail, the Mississippi State Hospital at Whitfield, by and through the Mississippi Director of Mental Health, and Tanya West, RN have utterly failed to deal with this devastating problem. Defendants' policies and procedures - or lack thereof - created abhorrent conditions of confinement, including repeated and persistent use of "chemical restraints" of Plaintiff Steven.

35.     Plaintiff Steven, a mentally ill inmate suffering from Schizophrenia, received grossly inadequate, erratic and inconsistent treatment, punitive treatment, improper treatment, or no treatment at all, continuously violating the constitutional and legal rights of Plaintiff Steven.

36.     Defendants, who were responsible for the health and safety of Plaintiff Steven, knew of his mental illness.  This is documented through instances where Plaintiff Steven was agitated, not eating and, throwing feces in his cell - a sharp contrast to the forensic medical exams done at Whitfield.

37.     On October 12th, 2010, the Circuit Court of Clay County ordered that civil commitment proceedings be commenced against Plaintiff Steven.  However, Special Master Thomas Storey signed an order October 20, 2010 finding that the Chancery Court lacked jurisdiction to hear this cause pursuant to Miss. Code Ann. §41-21-63 since Plaintiff Steven had pending criminal charges. Said Order attempted to transfer jurisdiction of the case back the Circuit Court of Clay County.

38.     Said Order was in clear violation of U.C.C.C.R. 9.06, which was in effect in 2010.

U.C.C.C.R. 9.06 states that if a defendant is found incompetent to stand trial, "the judge shall

order that civil proceedings as provided in §§41-21-61 to 41-21-107 of the Mississippi Code of

1972 be instituted.   Said proceedings *shall proceed notwithstanding* that the defendant has

criminal charges pending against him/her."   The Chancellor erred in refusing to accept

jurisdiction.

38.     From that date until August 15th, 2017, Plaintiff Steven was held in the custody of Clay

County, despite his obvious incompetence.

**COUNT I- FAILURE TO ALLOW INCOMPETENT PRISONER ACCESS TO
COURTS TO OBTAIN ADEQUATE MENTAL HEALTH SERVICES AND
TREATMENT IN VIOLATION OF THE THIRTEENTH AND FOURTEENTH
AMENDMENT TO THE UNITED STATES CONSTITUTION, TITLE II OF THE
AMERICANS WITH DISABILITIES ACT (the "ADA"), 42 U.S.C. §§ 12131 et seq.,
and THE REHABILITATION ACT (the "Rehab Act"), 29 U.S.C. § 794
(Against Defendants Clay County, Former Sheriff Laddie Huffman, Sheriff Eddie
Scott, Former District Attorney Forrest Allgood, Former Director of Mississippi
Department of Mental Health Edwin C. Legrand, III, Tanya West, RN, and John Does
1-5 )**

39.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if alleged

herein and make each a part hereof.

40.     Defendants owed a duty to Plaintiff Steven, a mentally impaired prisoner, to provide

adequate mental health services and treatment.

41.     The language of Title II of the Americans with Disabilities Act (ADA) is succinct: "[N]o

qualified individual with a disability shall, by reason of such disability, be excluded from

participation in or be denied the benefits of the services, programs, or activities of a public entity,

or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In *Pennsylvania DOC

v. Yeskey*, 524 U.S. 206 (1998) [PLN, Sept. 1998, p.1], the Supreme Court held that the ADA

applies to people in prison. In *Yeskey*, Justice Scalia wrote, "The text of the ADA provides no

basis for distinguishing these programs, services, and activities from those provided by public entities that are not prisons." Thus, Title II of the ADA extends to prisoners.

41.     Incompetent prisoners have a fundamental "right of access to courts" protected by the Fourteenth Amendment.  Further pre-trial detainees, who have not been duly convicted of any crime, cannot be forced into involuntary servitude to benefit a governmental entity under the Thirteenth Amendment.

42.     The Fourteenth Amendment reads, in part, "No State [can] deny to any person within its jurisdiction the equal protection of the laws." The Fourteenth Amendment, in conjunction with the ADA, ensures that prisoners with disabilities have the means with which to protect their rights.

43.     Title II regulates public services by requiring reasonable modifications be made for people with disabilities, and permits private lawsuits seeking monetary damages to be brought against states not in compliance with the ADA. Title II also provides recourse for state and local prisoners with disabilities (the ADA does not apply to federal executive branch agencies, including the Bureau of Prisons, but section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), applies to such agencies).

44.     In *Tennessee v. Lane*, 541 U.S. 509 (2004), the Supreme Court held a state's Eleventh Amendment immunity from suits involving monetary damages brought by citizens in federal court could be abrogated by section 5. That holding was based upon Congress' constitutional authority to provide access to the courts under the Fourteenth Amendment's due process clause.

45.     Title II of the ADA is the one under which a prisoner would file suit to address discrimination against a qualified individual with a disability by a public entity. Title II, as applied to discrimination against prisoners with disabilities, has been a congruent and

proportional response to actual and threatened constitutional violations. The Supreme Court's holding in *Tennessee v. Lane* that Title II is unquestionably valid, "as it applies to the class of cases implicating the accessibility of judicial services," was profound. It demonstrated that courts must be accessible for prisoners with disabilities.

46.     Some of the provision of Title II of the ADA provides that state and local governments:

a.      Can provide special benefits, beyond those required by the regulation, to individuals with disabilities.

b.      May not refuse to allow a person with a disability to participate in a service, program or activity simply because the person has a disability.

c.      Must provide programs and services in an integrated setting, unless separate or different measures are necessary to ensure equal opportunity.

d.      Shall operate their programs so that, when viewed in their entirety, they are readily accessible to and usable by individuals with disabilities.

e.      Are required to make reasonable modifications in policies, practices and procedures that deny equal access to individuals with disabilities, unless a fundamental alteration in the program would result.

f.      Must eliminate unnecessary eligibility standards or rules that deny individuals with disabilities an equal opportunity to enjoy services, programs or activities unless "necessary" for the provisions of the service, program or activity.

47.     Prisoners are considered a "qualified individual with a disability". Pursuant to the ADA, an "individual with a disability" is a person who: 1) has a physical or mental impairment that substantially limits a "major life activity," 2) has a record of such an impairment, or 3) is regarded as having such an impairment.  As a pre-trial detainee who was not free to leave the

Clay County jail, Plaintiff Steven – though never convicted of a crime – is a qualifying individual under the ADA and applicable case precedent.

48.     State and local governments are required to ensure that prisoners with disabilities are not excluded from services, programs and activities because prison buildings are not accessible. They are not required to remove physical barriers such as stairs in all existing buildings so long as they make programs and services accessible to prisoners who are unable to use an inaccessible existing facility. State and local governments can provide services, programs and activities to prisoners with disabilities through alternative means or methods if physical barriers are not removed.

49.     State and local governments are not required to take any actions that would result in fundamental alterations in the nature of services, programs or activities, or in undue financial or administrative burdens. Public entities must, however, take other available actions that would not result in a fundamental alteration or undue burden but would ensure that prisoners with disabilities receive access to services, programs or activities.

50.     While compensatory damages are available in ADA suits, the Supreme Court has held that punitive damages may not be awarded for violations of the ADA and Rehabilitation Act, overturning a $1.2 million punitive damages award in favor of a wheelchair-bound arrestee who was injured while being transported to a police station. *Barnes v. Gorman*, 536 U.S. 181 (2002).

51.     Holding Plaintiff Steven indefinitely for eleven years in the Clay County Jail without proceeding with a civil commitment proceeding is tantamount to a "life sentence" without ever being convicted of a crime. *Theon Jackson v. State of Indiana*, 92 S.Ct. 1845, 1847 (U.S. 1972).

52.     District Attorney Forrest Allgood and Sheriffs continuously held Plaintiff Steven in the Clay County Jail in contempt of a Circuit Court Order to initiate civil commitment proceedings

that would have allowed Plaintiff Steven to receive long-term treatment at a state mental institution.

53.     While a pre-trial detainee at the Clay County Jail, Plaintiff Steven was denied access to courts in violation of his Fourteenth Amendment rights. Further, while a pre-trial detainee at the Clay County Jail, Plaintiff Steven was forced to perform various tasks to the benefit of Clay County and Defendant Sheriffs, including janitorial tasks and meal service, in violation of his Thirteenth Amendment rights.

54.     Plaintiff Steven had a right to refuse medication and did refuse oral medication. Plaintiff Steven was involuntarily given intramuscular injections by Defendant County and Defendant Tanya West, RN, that were used as a "chemical restraint" without affording Plaintiff Steven due process rights, such as rights available under *Washington v. Harper*, 494 U.S. 210 (1990).

55.     Plaintiff Steven endured continuous and systematic deprivation of access to courts and denial of physician-recommended mental health treatment.

56.     Such policies and practices have been and continue to be implemented by Defendants and their agents, officials, employees, and all persons acting in concert with them under color of state law, in their official capacities, and are the direct and proximate cause of Plaintiff Steven's deprivation of rights secured by the United States Constitution under the Thirteenth and Fourteenth Amendment, as well as the ADA and Rehab Act.

57.     Other such acts and omissions that may be discovered are currently in Defendants possession.

58.     As a direct and proximate result of Defendants' conduct, Plaintiff Steven suffered pain and suffering, conditions of confinement, involuntary servitude, emotional distress, humiliation, false imprisonment and repeated psychotic states.

## COUNT II- MALICIOUS PROSECUTION
**(Against Defendants Clay County, Former Sheriff Laddie Huffman, Sheriff Eddie Scott, Former District Attorney Forrest Allgood, Thad Buck, Nancy Stuart, Pearson Lidell and John Does 1-5)**

59.     Plaintiff Steven realleges and incorporates by reference all preceding paragraphs as if alleged herein and make each a part hereof.

60.     This action at law for money damages arises under 42 U.S.C. § 1983, the United States Constitution and the laws of the State of Mississippi to redress a deprivation of rights under color of state law for malicious prosecution of Plaintiff Steven.

61.     A plaintiff in a § 1983 malicious prosecution action need establish only the elements of common-law malicious prosecution. The elements of malicious prosecution under Mississippi law are: 1) the institution of a criminal [or civil] proceeding; 2) by, or at the instance of the defendants; 3) the termination of such proceeding in plaintiff's favor; 4) malice in instituting the proceedings; 5) want of probable cause for the proceedings; and 6) the suffering of damages as a result of the action or prosecution complained of.

62.     Each Defendant carried out and perpetrated a mutually supportive conspiracy to deprive Plaintiff Steven, a legally incompetent person, of his rights by participating in a corrupt effort to illegally keep Plaintiff Steven in custody without a trial, deny Plaintiff Steven access to court, and deny Plaintiff Steven proper mental health care.

63.     Plaintiff Steven was arrested and charged in 2005 by Defendant District Attorney Forrest Allgood followed by an indictment by an April 2006 Grand Jury of Clay County.

64.     Plaintiff Steven was deemed incompetent to stand trial in October of 2010 during his competency hearing and the case was moved to the Chancery Court of Clay County with Special Master Thomas Storey.

65.     The Special Master held that the Chancery Court lacked jurisdiction because of Plaintiff Steven's pending criminal charges; however, this was in violation of his rights. It was clear from the medical opinions of Drs. McMichael and Gugliano that Plaintiff Steven was legally incompetent with no realistic probability that he would ever be restored to competence, but Defendants Clay County, Forrest Allgood, Laddie Huffman, Eddie Scott, Thad Buck, Nancy Stuart, and Pearson Lidell all failed to adhere to the requirement of civilly committing an individual who is unfit to stand trial per UCCR 9.06.

66.     It was not until August 15, 2017 that Plaintiff Steven was released from the State's custody after eleven years of wrongful imprisonment.

67.     As a proximate result of the above-described misconduct on the part of the Defendants, Plaintiff Steven was wrongfully imprisoned for eleven years. But for Defendants' above-described misconduct, Plaintiff Steven would have been civilly committed and released into the proper custody and/or released.

68.     Plaintiff prays for just compensation for the eleven years he was wrongfully imprisoned. Notwithstanding his eventual release, Plaintiff Steven's life has been ruined by the Defendants' misdeeds. Defendants improperly caused Plaintiff Steven to be removed from his freedom and family, and abruptly thrust instead into jail as an incompetent pre-trial detainee.

69.     Additionally, the emotional pain and suffering caused by losing eleven years in the prime of life has been substantial. During his wrongful incarceration, Plaintiff Steven was stripped of the various pleasures of basic human experience, from the simplest to the most important, which all free people enjoy as a matter of right. He missed out on the ability to share holidays, births, funerals, and other life events with loved ones, and the fundamental freedom to live one's life as

an autonomous human being. Further, Plaintiff Steven was made to engage in involuntary servitude to the economic benefit of Clay County.

70.     As a result of the foregoing, Plaintiff Steven has suffered physical damages, mental anguish, degradation and incurred medical expenses, all proximately caused by Defendants' misconduct.

71.     By reason of the aforementioned acts and omissions of Defendants, Plaintiff was compelled to secure the services of an attorney to redress the wrongs and deprivations of Plaintiff Steven's rights and virtue thereof, Plaintiff has incurred and will be liable for attorney's fees.

72.     The acts and omissions of Defendants were committed by each Defendant knowingly, willfully and maliciously, with the intent to restrain, harm, injure, vex, harass and oppress Plaintiff Steven with a conscious disregard of Plaintiff Steven constitutional rights and by reason thereof, Plaintiff seeks punitive and exemplary damages from each Defendant in an amount to be determined by a jury.

### COUNT III – 42 U.S.C. §1983 - FALSE IMPRISONMENT
**(Against Clay County, Former Sheriff Laddie Huffman, Sheriff Eddie Scott, Former District Attorney Forrest Allgood, Former Director of Mississippi Department of Mental Health Edwin C. Legrand, III, Tanya West, RN, and John Does 1-5)**

73.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

74.     As described more fully above, Clay County, Former Sheriff Laddie Huffman, Sheriff Eddie Scott, Former District Attorney Forrest Allgood, Former Director of Mississippi Department of Mental Health Edwin C. Legrand, III, and Tanya West, RN and John Does 1-5, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, caused Plaintiff Steven to be wrongfully imprisoned in violation of his constitutional rights.

75.     As a result of this violation, Plaintiff Steven suffered injuries, including but not limited to emotional distress, as is more fully alleged above.

76.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff Steven's mental state and constitutional rights.

77.     The misconduct described in this Count was undertaken pursuant to the policy and practice of Clay County, Former Sheriff Laddie Huffman, Sheriff Eddie Scott, Former District Attorney Forrest Allgood, Former Director of Mississippi Department of Mental Health Edwin C. Legrand, III, Tanya West, RN, and John Does 1-5.

## COUNT IV – STATE LAW CLAIM
## PER THE MISSISSIPPI TORT CLAIMS ACT
### (Against all Defendants)

78.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

79.     The acts and conduct of the Defendants as set forth above were extreme and outrageous. The Defendants intended to cause or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff Steven, as is more fully alleged above, while Plaintiff Steven was not engaged in criminal activity.

80.     Said actions and conduct did directly and proximately cause pain and suffering as well as severe emotional distress to Plaintiff Steven, and thereby constituted intentional and/or negligent infliction of emotional distress.

81.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

82.     As a proximate result of Defendants' wrongful acts, Plaintiff suffered damages, including

pain and suffering and severe emotional distress and anguish.

**COUNT V – VIOLATION OF FOURTEENTH AMENDMENT RIGHTS**
**UNDER 42 U.S.C. SECTION 1983 BASED UPON LACK OF DUE PROCESS FOR**
**INVOLUNTARY ADMINISTRATION OF MEDICATION**
**(Against Clay County, Former Sheriff Laddie Huffman, Sheriff Eddie Scott, Former**
**District Attorney Forrest Allgood, Tanya West, RN and John Does 1-5)**

83.     Plaintiff Steven realleges and incorporates by reference all preceding paragraphs as if

alleged herein.

84.     Defendants had a duty to provide Plaintiff Steven recommended mental health treatment

as suggested by the Final Forensic Competency Evaluation.

85.     Defendants had a duty to safeguard Plaintiffs constitutional rights and comply with the

ADA in the diagnosis and treatment of Plaintiff Steven's mental illness.

86.      Patients have a fundamental right to refuse medical treatment, including medications.

*Cruzan v. Missouri Department of Health,* 497 U.S. 261 (U.S. 1990).

87.     Tanya West attempted to create an "artificial competency" through the involuntary

intramuscular psychotropic drugs.

88.     As a pre-trial detainee, Plaintiff Steven had the right to refuse psychiatric medication

which has been held to be protected by the United States Constitution, *Washington v. Harper*,

494 U.S. 210 (1990). State constitutions also provide these protections. The government may not

infringe upon Plaintiff's rights without first meeting the basic requirements of the Due Process

Clause of the Fourteenth Amendment, both substantively and procedurally.

89.     Medical staff at the Clay County Jail documented Plaintiff Steven was refusing his oral

medications, something Plaintiff Steven has a constitutional right to do.   Tanya West, RN,

obtained an order from "Dr. Miller" to give Plaintiff Steven repeated intra muscular injections of

medication that was used as a "chemical restraint" without consent of Plaintiff Steven and without affording Plaintiff Steven due process for the involuntary injections.

90.     Defendants denied Plaintiff Steven access to basic mental health care.

91.     Defendants had a duty to obtain an emergency court order to transport Plaintiff Steven to a psychiatric facility for behavioral changes that threatened Plaintiff Steven or others safety.

92.     Defendants cut off access to recommended long-term psychiatric treatment in violation of a court order to obtain a Civil Commitment and failed to do so, depriving Plaintiff Steven of necessary psychiatric medical care.

93.     Defendants continued a pervasive eleven-year history of denial of access to recommended psychiatric services and treatment, involuntary administration of "chemical restraints" and holding Plaintiff Steven in custody in violation of a court order demonstrates a long history of deliberate indifference.

94.     Defendants failed to hire and retain qualified health care professionals and failed to monitor and hold its health care contractors accountable.

95.     Acting under Color of law, Defendants in violation of a court order to obtain a civil commitment, was instead administering without authority of law what is tantamount to a "life sentence" by keeping Plaintiff Steven incarcerated in the Clay County Jail, a temporary holding facility mostly for misdemeanors, without Plaintiff Steven ever being convicted of any crime.

96.     These policies, practices and customs were implemented by Defendants and their agents, officials, employees, and all persons acting in concert with them under color of state law, in their official capacities, and were the cause of Plaintiffs systematic deprivation of rights secured by the United States Constitution under the Thirteenth and Fourteenth Amendments and federal law.

97.     Defendants have been and are aware of all of the deprivations complained of herein and have condoned or been deliberately indifferent to such conduct.

98.     Defendants' policies, practices and customs are designed to intentionally ignore the integrity of the Courts, Constitutional protections of prisoners and demonstrate a deliberate indifference to Plaintiff Steven's mental health needs.

99.     Defendants' acts, and omissions constitute violations of the conditions of confinement of Plaintiff Steven and caused involuntary servitude to benefit state government, in violation of the Thirteenth and Fourteenth Amendments to the United States Constitution.

100.    Defendants' policies, practices and customs, acts and omissions placed Plaintiff at unreasonable, continuing and foreseeable risk of exacerbating serious medical and mental health problems.

101.    Defendants' violations of Plaintiff Steven's constitutional rights have inflicted both physical and mental harm and injury, including by causing avoidable pain, mental suffering, and deterioration of Plaintiff Steven's health.

102.    Plaintiff would show unto the Court that the Defendants, acting intentionally and/or with reckless disregard for Plaintiff Steven's rights, took actions to deprive him of his Thirteenth and Fourteenth Amendment rights.

103.    As a proximate result of Defendants' unconstitutional policies, practices, customs, acts, omissions, and deliberate indifference, Plaintiff has suffered and will continue to suffer immediate and irreparable injury, including physical, psychological, and emotional injury. Plaintiff suffered damages as a result of the aforementioned conduct as set heretofore and/or hereinafter that resulted in the denial of necessary mental health services and treatment and the wrongful imprisonment of Plaintiff Steven for eleven years.

**COUNT VI – VIOLATION OF THIRTEENTH AND FOURTEENTH AMENDMENT**
**RIGHTS UNDER 42 U.S.C. § 1983 THROUGH NEGLIGENT HIRING AND**
**SUPERVISION**
**(Against Clay County and John Does 1-5)**

104.   Plaintiff Steven realleges and incorporates by reference all preceding paragraphs as if alleged herein.

105.   Defendants failed to hire qualified employees and adequately train or supervise individuals in their employ or under their control and supervision, specifically how employees, agents and servants should protect, treat and interact with pre-trial detainees, such as Plaintiff Steven, who have serious mental health needs.

106.   Defendants had a duty to adopt policies and procedures that afford mentally ill and/or incompetent prisoners adequate mental health treatment, access to courts and due process safeguards to protect prisoners' Constitutional rights, such as access to long-term mental health treatment and procedural due process for refusing medication.

107.   Plaintiffs would show unto the Court that the Defendants, through their failure to train their employees, acted with reckless disregard for Plaintiff Steven's medical condition and therefore took actions to deprive him of his Fourteenth Amendment rights to care.

108.   Plaintiffs suffered damages as a result of the aforementioned conduct as set out heretofore and hereinafter.

**COUNT VII  - NEGLIGENCE**
**(Against Thad Buck, Nancy Stuart, Pearson Liddell, Jr. and John Does 1-5)**

109.   Plaintiffs reallege and incorporate by reference all preceding paragraphs as if alleged herein.

110.   Defendants had a duty to provide Plaintiff Steven diligent, loyal and conflict-free representation, including ethical duties owed to an incompetent client.

111.    The Sixth and Fourteenth Amendments to the United States Constitution operate as sureties for the right to effective assistance of counsel.

112.    The Sixth Amendment guarantees, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense." *Wheat v. United States*, 486 U.S. 153, 158, 108 S. Ct. 1692, 1696, 100 L. Ed. 2d 140 (1988) quoting U.S. Const. amend. VI. (emphasis added). This adept representation encompasses two broad principles: minimum competence and loyal assistance. *Armstrong v. State*, 573 So.2d 1329 (Miss. 1990). The *Armstrong* court, citing to *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963), recognized effective assistance of counsel envelops conflict-free representation. *Stringer v. State*, 485 So. 2d 274, 275 (Miss. 1986) (emphasis added).

113.    A conflict may prevent an attorney from raising issues such as competence to stand trial and waiving constitutional rights for a client that lacks understanding of his constitutional rights.

114.    The American Bar Association's Model Code of Professional Responsibility, its Model Rules of Professional Conduct, as well as the Mississippi Rules of Professional Conduct, impose duties of loyalty and representation free of conflicts.  See ABA Model Code of Professional Responsibility DR 5-105(C) (1980); Model Rules of Professional Conduct, Rule 1.7 (1984); Miss. Rules of Professional Conduct, Rule 1.7 (1987).

115.    Ethics rules mandate full client disclosure and client consent to waive the conflict where the attorney has a known conflict.

116.    Thad Buck, a former Clay County public defender was appointed October 24, 2005 to represent Plaintiff Steven by the Clay County Circuit Court.

117.    A year and a half later, Defendant Buck filed a Motion to Withdraw as counsel on April 12, 2006. Defendant Buck admitted in this Motion to the court a conflict of interest existed with

his representation of Plaintiff Steven, based on Defendant Buck's past employment by Clay County and Defendant Buck's close friendships and affiliation with the police victims.

118.   In violation of professional ethics rules, Defendant Buck provided a year and a half of representation with a known, yet undisclosed conflict.

119.   Defendant Buck did not disclose the conflict of interest to Plaintiff Steven nor was Plaintiff Steven competent to consent to such a conflict had it been properly disclosed.

120.   Defendant Buck never sought a competency evaluation during the year and a half of representation.

121.   Defendant Buck's Motion to Withdraw filed April 12, 2006 based on his conflict of interest was filed on the same date as Plaintiff Steven's arraignment hearing. Defendant Buck did not seek a continuance then waived the arraignment and reading of the indictment and entered a plea of not guilty while knowing his client nor the court was aware of the conflict of interest at the arraignment.

122.   Defendant Buck did not have consent or authority from Plaintiff Steven, an incompetent client, at the arraignment to waive Plaintiff Steven's rights or enter pleas for his incompetent client.

123.   Defendant Buck did not raise the issue of his client's competency at the arraignment hearing.

124.   Defendant Buck intentionally, negligently and/or with reckless disregard for the constitutional rights of Plaintiff Steven, concealed the incompetence of Plaintiff Steven from the Court allowing a criminal trial to be set for July 17, 2006.

125.   Judge Kitchens granted the withdrawal of Defendant Buck on May 22, 2006 and appointed new attorney Defendant Nancy Stuart.

126.     Defendant Stuart had an ethical duty and a legal duty to protect her incompetent client from lack of appropriate medical care while in custody and protection of Plaintiff Steven's constitutional rights.

127.     Defendant Stuart intentionally, negligently or with reckless disregard of Plaintiff Steven's constitutional rights failed to diligently represent Plaintiff Steven and seek legal protections for her incompetent client, such as adequate and timely access to mental health care.

128.     The majority of Defendant Stuart's representation consisted of multiple hearing continuances. After only 9 hours of legal work for one entire year of representation, Defendant Stuart filed a Motion to Withdraw dated May 2, 2007 based on her move out of state. She was paid from the Clay County treasury. Defendant Pearson Liddell Jr. was appointed as defendant's counsel on May 14, 2007.

129.     Defendant Lidell, Jr. had an ethical duty and a legal duty to protect his incompetent client from lack of appropriate medical care while in custody and protection of Plaintiff Steven's constitutional rights.

130.     Defendant Lidell, Jr. intentionally, negligently or with reckless disregard of Plaintiff Steven's constitutional rights failed to diligently represent Plaintiff Steven and seek legal protections for his incompetent client, such as adequate and timely access to mental health care.

### COUNT VIII- GROSS NEGLIGENCE
### (Against Thad Buck, Nancy Stuart, Pearson Liddell, Jr., and John Does 1-5)

131.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if alleged herein.

132.     Defendants had a duty to provide Plaintiff Steven diligent, loyal and conflict-free representation, including ethical duties owed to an incompetent client.

133.    A conflict may prevent an attorney from raising issues such as competence to stand trial and waiving constitutional rights for a client that lacks understanding of his constitutional rights.

134.    The American Bar Association's Model Code of Professional Responsibility, its Model Rules of Professional Conduct, as well as the Mississippi Rules of Professional Conduct, impose duties of loyalty and representation free of conflicts.  See ABA Model Code of Professional Responsibility DR 5-105(C) (1980); Model Rules of Professional Conduct, Rule 1.7 (1984); Miss. Rules of Professional Conduct, Rule 1.7 (1987).

135.    Ethics rules mandate full client disclosure and client consent to waive the conflict where the attorney has a known conflict.

136.    Defendant Buck, a former Clay County public defender was appointed October 24, 2005 to represent Plaintiff Steven by the Clay County Circuit Court.

137.    A year and a half later, Defendant Buck filed a Motion to Withdraw as counsel on April 12, 2006. Defendant Buck admitted in this Motion to the court a conflict of interest existed with his representation of Plaintiff Steven, based on Defendant Buck's past employment by Clay County and Defendant Buck's close friendships and affiliation with the police victims.

138.    In violation of professional ethics rules, Defendant Buck provided a year and a half of representation with a known, yet undisclosed conflict.

139.    Defendant Buck did not disclose the conflict of interest to Plaintiff Steven nor was Plaintiff Steven competent to consent to such a conflict had it been properly disclosed.

140.    Defendant Buck never sought a competency evaluation during the year and a half of representation.

141.    Defendant Buck's Motion to Withdraw filed April 12, 2006 based on his conflict of interest was filed on the same date as Plaintiff Steven's arraignment hearing.  Defendant Buck

did not seek a continuance then waived the arraignment and reading of the indictment and entered a plea of not guilty while knowing his client nor the court was aware of the conflict of interest at the arraignment.

142.    Defendant Buck did not have consent or authority from Plaintiff Steven, an incompetent client, at the arraignment to waive Plaintiff Steven's rights or enter pleas for his incompetent client.

143.    Defendant Buck did not raise the issue of his client's competency at the arraignment hearing.

144.    The criminal trial of an incompetent defendant violates due process, *Cooper v. Oklahoma*, 517 U.S. 348 (1996).

145.    Defendant Buck intentionally, grossly negligently and/or with reckless disregard for the constitutional rights of Plaintiff Steven, concealed the incompetence of Plaintiff Steven from the Court allowing a criminal trial to be set for July 17, 2006.

146.    Judge Kitchens granted the withdrawal of Defendant Buck on May 22, 2006 and appointed a new attorney, Defendant Stuart.

147.    Defendant Stuart had an ethical duty and a legal duty to protect her incompetent client from lack of appropriate medical care while in custody and protection of Plaintiff Steven's constitutional rights.

148.    Defendant Stuart intentionally, grossly negligently or with reckless disregard of Plaintiff Steven's constitutional rights failed to diligently represent Plaintiff Steven and seek legal protections for her incompetent client, such as adequate and timely access to mental health care.

149.    The majority of Defendant Stuart's representation consisted of multiple hearing continuances.

150.    After only 9 hours of legal work spanning one year, Defendant Stuart filed a Motion to Withdraw May 2, 2007 based on her move out of state. She was paid from the Clay County treasury. Defendant Pearson Liddell Jr. was appointed as defendant's counsel on May 14, 2007.

151.    Defendant Lidell, Jr. had an ethical duty and a legal duty to protect his incompetent client from lack of appropriate medical care while in custody and protection of Plaintiffs constitutional rights.

152.    Defendant Lidell, Jr. intentionally, grossly negligently or with reckless disregard of Plaintiffs constitutional rights failed to diligently represent Plaintiff Steven and seek legal protections for his incompetent client, such as adequate and timely access to mental health care.

### COUNT IX - PUNITIVE DAMAGES
### (Against All Defendants)

153.    Miss. R. Crim. Proc. 12.5 provides a trial court *shall promptly* hold a competency hearing after submission of the mental health evaluations. Miss. R. Crim. Proc. 12.5, enacted July 2017, is based on UCCR 9.06 which states that after a forensic evaluation, the court *shall* conduct a hearing to determine if the defendant is competent to stand trial.  Both of these rules were in effect during the time of Plaintiff Steven's incarceration.

154.    Plaintiff Steven did not receive a prompt competency hearing, with the assistance of Plaintiff Steven's own counsel, the Competency hearing set for October 14, 2008, was delayed with multiple continuances until July 22, 2010, two years after Plaintiff Steven was deemed incompetent with two years in state custody without the recommended mental health treatment.

155.    As a direct and proximate cause of the Defendants acts and omissions, Plaintiff Steven suffered severe and persistent deprivation of his constitutional rights including involuntary servitude or slavery as well as lack and/or denial or delay of appropriate mental health services while incarcerated.

156.    Defendants acts and/or omissions were negligent, grossly negligent, willful, intentional and/or with reckless disregard of Plaintiff Steven's safety and well-being, warranting the imposition of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Rachel Harris, Guardian of Steven Jessie Harris on behalf of Steven Jessie Harris, respectfully requests that this Court grant the following relief:

A.  Preliminarily and permanently enjoin Defendants, and their agents, employees, officials, and all person acting in concert with them under color of state law from subjecting Plaintiff Steven to the illegal and unconstitutional conditions, acts, omissions, policies and practices set forth herein;

B.  Order Defendants to develop and implement, as soon as practical, a plan to eliminate the barriers incompetent prisoners face to access courts and mental health services as set forth herein. Defendants plan shall include at a minimum the following;

i.   **Mental Health Care:**    Provision of timely access to adequate treatment for serious mental illness, including but not limited to medication, therapy, inpatient treatment, that abates violations of the ADA, Rehab Act, Thirteenth, and Fourteenth Amendment;

ii.  **Medical Care:**   Provision of timely access to adequate medical care, including services such as dental and optical care to treat serious health needs of prisoners;

iii. **Accountability, Oversight, and Monitoring:** Adequate monitoring and timely remediation of the performance of any and all county and private employees, including health contractors.

C. Award Plaintiff the costs of this suit, and reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. 1988, and other applicable laws;

D. Award Plaintiff compensatory and punitive damages, pre and post judgment interest, and any other and further relief as the Court deems just and proper.

Respectfully submitted, this the 27th day of September, 2018.

                                **RACHEL HARRIS, GUARDIAN OF**
                                **STEVEN JESSIE HARRIS, Plaintiff**

                                s/Carlos E. Moore

        **By:**        _____
                                **Carlos E. Moore, MSB# 100685**
                                **Tina M. Bullock, MSB# 103114**
                                **Michael S. Carr, MSB# 102138**

OF COUNSEL:

**TUCKER|MOORE GROUP, LLP**
Carlos E. Moore, Esq. (MBN 100685)
306 Branscome Drive
Grenada, MS 38901
662-227-9940 – phone
662-227-9941 – fax
Email: carlos@tuckermoorelaw.com

**SANDERS PHILLIPS GROSSMAN BULLOCK, PLLC**
Tina M. Bullock, Esq. (MBN 103114)
3060 Peachtree Road NW, Suite 1150
Atlanta, GA 30305
601-826-2055- phone
601-500-5786- fax
Email: tbullock@thesandersfirm.com

**CARR LAW FIRM, PLLC**
Michael S. Carr, Esq. (MBN 102138)
301 W Sunflower Road, Suite D
Cleveland, MS 38732
662-441-1529- Phone
662-441-1530- Fax
Email: mcarr@carrlawpllc.com

*(Attorneys for Plaintiff)*