IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**RACHEL HARRIS, GUARDIAN OF**                           **PLAINTIFF**
**STEVEN JESSIE HARRIS ON**
**BEHALF OF STEVEN JESSIE HARRIS**

**v.**                               **CIVIL ACTION NO. 1:18-CV-167-DMB-RP**

**CLAY COUNTY, MISSISSIPPI, ET AL.**                        **DEFENDANTS**

## MEMORANDUM OF AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

### INTRODUCTION

Rachel Harris has filed this action on behalf of Steven Jessie Harris ("Harris"), as his guardian, alleging claims pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and state law. Harris's First Amended Complaint, Docket No. 5, arises out of his arrest and indictment for one count of murder, three counts of aggravated assault on a law enforcement officer, two counts of armed robbery, two counts of kidnaping, two counts of aggravated assault, and one count of shooting into an occupied automobile, all committed on or about October 8, 2005, and his resulting intermittent confinement in the Clay County, Mississippi jail until August 15, 2017. Docket No. 5 at ¶¶ 20, 21, 32, 63. According to the First Amended Complaint, Harris underwent multiple competency evaluations at the Mississippi State Hospital at Whitfield during this time period. *Id.* at ¶¶ 22-25. The Clay County Circuit Court conducted a competency hearing, found Harris not competent to stand trial, and ordered the initiation of civil commitment proceedings. *Id.* at ¶¶ 28-29, 37. However, the chancery court held that it lacked jurisdiction to order civil commitment due to the pending criminal charges against Harris. *Id.* ¶ 37.

As a result, the First Amended Complaint asserts that Harris remained in custody until August 15, 2017, following dismissal of his criminal case. *Id.* at ¶¶ 32, 38.

In his First Amended Complaint, Harris has named as a defendant former District Attorney Forrest Allgood, in his official and individual capacities. Docket No. 5 at ¶11. Allgood was the district attorney at the time Harris was charged and indicted by the grand jury of Clay County, Mississippi. *Id.* at ¶ 63. Harris alleges that Allgood acted with the other defendants to deny Harris mental health treatment in violation of the ADA and the Rehabilitation Act. *Id.* at ¶¶ 39-58. He also asserts § 1983 claims against Allgood and the other defendants for the purported denial of his Fourteenth Amendment right of access to the courts, malicious prosecution, false imprisonment, and lack of due process for involuntary administration of medication. *Id.* at ¶¶ 39-77, 83-103. Harris has also included in his First Amended Complaint a state law claim for infliction of emotional distress against Allgood and the other defendants. *Id.* at ¶¶78-82. Harris's remaining claims are not asserted against Allgood.

Harris seeks an injunction against the defendants prohibiting them from subjecting Harris to the "illegal and unconstitutional conditions, acts, omissions, policies and practices set forth" in his First Amended Complaint. *Id.* at p. 31, "Prayer for Relief." He also asks the Court for an injunction requiring the defendants "to develop and implement as soon as practical, a plan to eliminate the barriers incompetent prisoners face to access courts and mental health services . . . ." *Id.* Harris also asks for an award of compensatory and punitive damages, pre- and post-judgment interest, attorneys' fees, and expenses. *Id.* at p. 32.

Because Harris has not alleged that he was denied the benefits of any services or programs on the basis of his mental illness, he has failed to state a valid claim under the ADA or the

2

Rehabilitation Act. Also, Harris's § 1983 claims for monetary damages against Allgood in his official capacity are barred by his Eleventh Amendment immunity. Moreover, Harris cannot succeed on any claim for injunctive relief under § 1983 against Allgood because Harris has not alleged an ongoing violation of federal law, threat of irreparable injury, or authority of Allgood to provide the relief requested. Allgood in his individual capacity is entitled to dismissal of Harris's § 1983 claims for monetary relief based on his prosecutorial immunity from suit, and the nonexistence of a constitutional right to be free from malicious prosecution. In addition, Harris's state law claims are barred by the Mississippi Tort Claims Act notice requirement and the applicable statute of limitations. As a result, Allgood is entitled to dismissal of all claims against him in this matter.

## ARGUMENT

### Standard for Dismissal

"A case is properly dismissed for lack of subject matter jurisdiction [under Fed. R. Civ. P. 12(b)(1)] when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2nd Cir. 1996)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Dismissal for lack of jurisdiction under Rule 12(b)(1) is proper when "it appears certain that the plaintiff cannot prove any set of facts in support of her claim which would entitle her to relief." *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992). Because sovereign immunity limits the jurisdiction of the federal courts, an action that is barred by sovereign immunity should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Warnock v. Pecos County, Tex.*, 88 F.3d 341, 343 (5th Cir. 1996). Such a motion to dismiss on

Eleventh Amendment grounds "involves a claim to a fundamental constitutional protection," the value of which is lost if the litigation is allowed to proceed. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 145 (1993).

A cause of action may be dismissed under Fed. R. Civ. P. 12(b)(6) "if it appears that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Baton Rouge Bldg. & Const. Trades Council AFL-CIO v. Jacobs Constructors, Inc.*, 804 F.2d 879, 881 (5th Cir. 1986). To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Id.* at 664. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

A complaint barred by an affirmative defense, such as prosecutorial immunity or the statute of limitations, may be properly dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *See Mowbray v. Cameron Cty., Tex.*, 274 F.3d 269, 276 (5th Cir. 2001) (applying 12(b)(6) standard to motion to dismiss based on prosecutorial immunity); *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (" a complaint that shows relief to be barred by an affirmative defense, such as the statute of limitations, may be dismissed for failure to state a cause of action"). Like other forms of official immunity, prosecutorial immunity is an immunity from suit, not just immunity from liability. *Boyd*

*v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994). As a result, the immunity issue is "a threshold question, to be resolved as early in the proceedings as possible." *Id.*

### I. Harris Has Failed to State a Valid ADA or Rehabilitation Act Claim.

In Count I of his First Amended Complaint, Harris alleges that the defendants, including Allgood, violated Title II of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act by denying him mental health treatment.[1] Docket No. 5 at ¶¶39-58. Title II of the ADA provides, "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

> The language of Title II generally tracks the language of Section 504 of the Rehabilitation Act of 1973, and Congress' intent was that Title II extend the protections of the Rehabilitation Act to cover all programs of state or local governments, regardless of the receipt of federal financial assistance and that it work in the same manner as Section 504. In fact, the statute specifically provides that the remedies, procedures and rights available under Section 504 shall be the same as those available under Title II. Jurisprudence interpreting either section is applicable to both.

*Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000) (internal quotations omitted). "[T]he central purpose of the ADA and § 504 of the Rehabilitation Act is to assure that disabled individuals receive 'evenhanded treatment' in relation to the able-bodied." *Doe v. Pfrommer*, 148 F.3d 73, 83 (2nd Cir. 1998).

---

[1] To the extent that Harris is alleging an ADA or Rehabilitation Act claim against Allgood in his individual capacity, the Fifth Circuit has held that government employees cannot be sued individually under the statutes. *Nottingham v. Richardson*, 499 Fed. Appx. 368, 376 n.6 (5th Cir. 2012) (citing *Lollar v. Baker*, 196 F.3d 603, 608–09 (5th Cir. 1999)).

Harris correctly states that prisons and jails are public entities, and detainees may bring claims against their jailors for disability discrimination under Title II of the ADA and Section 504 of the Rehabilitation Act. *See Pa. Dep't of Corrections v. Yeskey*, 524 U.S. 206, 209-10 (1998). It is also true that mental illness may be a qualified disability for purposes of the ADA and the Rehabilitation Act. 42 U.S.C. § 12102(1). However, even assuming Harris is a qualified individual with a disability and that Allgood is a proper defendant, Harris's claim under the ADA and the Rehabilitation Act fails for a fundamental reason – Harris has not alleged that the defendants denied him the benefits of any services, programs, or activities <u>because of his disability</u>. *See Goodman v. Johnson*, 524 Fed. Appx. 887, 890 (4th Cir. 2013) (affirming dismissal of ADA claim because of plaintiff's failure to allege facts indicating that, due to his disability, he has been deprived of benefits for which he was otherwise qualified); *Atkins v. Cty. of Orange*, 251 F.Supp.2d 1225 (S.D. N.Y. 2003) ("With no allegation of disparate treatment, no claim for discrimination under the ADA or Rehabilitation Act lies."). "The ADA prohibits discrimination because of disability, not inadequate treatment for disability." *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010). Because Harris has not alleged that he was subjected to discrimination based on his mental illness, he has failed to state a valid claim under the ADA or Rehabilitation Act. *See Kokinda v. Penn. Dep't of Corr.*, 663 Fed. Appx. 156, 159 (3rd Cir. 2016) ("the ADA prohibits disability-based discrimination, 'not inadequate treatment for the disability'") (quoting *Simmons*, 609 F.3d at 1022); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (in the absence of discrimination, the ADA is not "violated by a prison's simply failing to attend to the medical needs of its disabled prisoners"); *Doe v. Harris Cty., Tex.*, Civil Action No. H-16-2133, 2017 WL 4402590, *29 (S.D. Tex. Sept. 29, 2017) ("While the Constitution may require certain mental health treatment for jail detainees, the

ADA does not compel Harris County to provide any particular treatment in order to prevent discrimination."); *George v. La. Dep't of Pub. Safety & Corr.*, Civil Action No. 3:14-338-JWD-EWD, 2016 WL 3568109, *10 (M.D. La. Jun. 23, 2016) ("the ADA is not violated by a prison failing to attend to the medical needs of its disabled prisoners"); *Cheek v. Nueces Cty., Tex.*, Civil Action No. 2:13-CV-26, 2013 WL 4017132, *18 (S.D. Tex. Aug. 5, 2013) (dismissing ADA and Rehabilitation Act claims of county jail detainee found mentally incompetent to stand trial because the statutes do not require provision of "any particular treatment as a matter of preventing discrimination"). Harris's ADA and Rehabilitation Act claim against Allgood should be dismissed for failure to state a claim upon which relief may be granted.

> **II. Harris's § 1983 Claims for Monetary Damages Against Allgood in His Official Capacity Are Barred by the Eleventh Amendment to the United States Constitution.**

In Counts I,[2] II, III, and V, Harris includes Allgood as one of the defendants in his § 1983 claims for denial of access to the courts, malicious prosecution, false imprisonment, and lack of due process for involuntary administration of medication. Docket No. 5 at ¶¶ 39-77, 83-103. He seeks both compensatory and punitive damages, as well as attorneys' fees, litigation expenses, and pre- and post-judgment interest. *Id.* at p. 32. However, all monetary claims asserted against Allgood in his official capacity under § 1983 are barred by his Eleventh Amendment immunity.

The Eleventh Amendment incorporates common law principles of sovereign immunity and confirms that the judicial power established by Article III does not confer jurisdiction over suits

---

[2] Although Harris does not cite § 1983 in Count I, his claim for violation of his Fourteenth Amendment right to access to the courts would have to be pursued under § 1983. *See Hearth, Inc. v. Tex. Dep't of Public Welfare*, 617 F.2d 381, 382-83 (5th Cir. 1980) (causes of action do not arise directly from the Constitution, but claims against state officials for constitutional violations may be brought under § 1983).

7

against non-consenting states. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). "The very object and purpose of the 11th Amendment were to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *In re Ayers*, 123 U.S. 443, 508 (1887). "The amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993).

It is "well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Suits against state agencies or officials which ultimately seek monetary recovery from state funds are barred by the Eleventh Amendment. *Id.* Thus, state officials are entitled to Eleventh Amendment immunity for claims asserted against them in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). The reasoning behind this well-established principle is that "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents." *Id.* (quoting *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Moreover, states and their arms and officials are not "persons" who can be held liable under § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989).

Mississippi's district attorney offices are primarily state-funded, and the district attorneys' authority extends to statewide concerns. *Chrissy F. by Medley v. Miss. Dep't of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir. 1991). As a result, the Fifth Circuit has held that Mississippi district attorneys are state officials entitled to Eleventh Amendment immunity. *Id.*; *Hudson v. City of New Orleans*, 174 F.3d 677, 682 (5th Cir. 1999); *Brooks v. George Cty., Miss.*, 84 F.3d 157, 168 (5th Cir. 1996). *See also Davis v. City of Vicksburg, Miss.*, Civil Action No. 3:13-cv-886-DCB-MTP, 2015 WL

4251008, *2 (S.D. Miss. July 13, 2015) (Mississippi's circuit courts are part of the state court system, and therefore considered "arms of the state," entitling them and their officials to Eleventh Amendment protection); *Brown v. Harrison County Circuit Court*, 1:05-cv-289-LG-RHW, 2007 WL 1306422, *2 (S.D. Miss. Apr. 30, 2007) ("Additionally, the District Attorney's Office does not enjoy a separate legal existence under Mississippi state law and, therefore, the Plaintiff cannot pursue a cause of action against it.").

Congress may abrogate state sovereign immunity when it unequivocally intends to do so and, in its abrogation, acts pursuant to a valid grant of constitutional authority. *Tennessee v. Lane*, 541 U.S. 509, 509-10 (2004); *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). However, § 1983 has not abrogated Eleventh Amendment immunity, and the State of Mississippi has not waived it. *Hines v. Miss. Dep't of Corr.*, 239 F.3d 366 (5th Cir. 2000) (Congress has not chosen to abrogate the states' immunity for suits under §§ 1981, 1983, and 1985); *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999) (Section 1983 does not abrogate Eleventh Amendment immunity); Miss. Code Ann. § 11-46-5(4) (preserving Mississippi's Eleventh Amendment immunity).

As a result, Harris's § 1983 claims for monetary damages against Allgood in his official capacity are barred by the Eleventh Amendment.

### III. Harris Is Not Entitled to Injunctive Relief Against Allgood.

State official Eleventh Amendment immunity is subject only to the *Ex parte Young* exception for suits against state officials for prospective relief from alleged federal law violations. *See McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004) (citing *Ex parte Young*, 209 U.S. 123 (1908)). "[A] federal court's remedial power, consistent with the Eleventh Amendment,

is necessarily limited to prospective injunctive relief . . . ." *Edelman v. Jordan*, 415 U.S. 651, 677 (1974). To be permissible under *Ex parte Young*, the claim must involve a violation of federal law which is ongoing, and the remedy sought must be designed to ensure future compliance with that federal law. *Papasan v. Allain*, 478 U.S. 265, 277-78, 282 (1986).

Harris asks this Court to enjoin the defendants from subjecting him to the purportedly illegal and unconstitutional conditions described in his First Amended Complaint. Docket No. 5 at p. 31. He also seeks an order requiring the defendants "to develop and implement, as soon as practical, a plan to eliminate the barriers incompetent prisoners face to access courts and mental health services." *Id.* To the extent Harris is alleging previous violations of federal law against him during his detention in the Clay County jail, his claim is not subject to the *Ex parte Young* exception. *Green v. Mansour*, 474 U.S. 64, 73 (1985) ("There is no claimed continuing violation of federal law, and therefore no occasion to issue an injunction.").

Moreover, "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). Because Harris is no longer being detained, he may not seek injunctive relief related to the conditions of confinement of incompetent prisoners. *See Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988) (holding that former inmates complaining about conditions of confinement could not seek injunctive relief). Similarly, Harris has not alleged any threat against him of irreparable injury for which injunctive relief would be properly awarded. "It is axiomatic that to obtain injunctive relief, [the plaintiff] must show a real danger that without the injunction he will suffer an irreparable injury." *Johnson v. Kegans*, 870 F.2d 992, 999 (5th Cir. 1989). In addition, even if Harris were entitled to injunctive relief in this case, Allgood would not be a proper party against whom the injunction could

lie. *See id.* (finding officials lacked the authority necessary to make them the appropriate parties for the injunctive relief requested); *Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) ("a plaintiff may not sue a state official who is without any power to enforce the complained-of statute"). As a result, Allgood is entitled to dismissal of Harris's § 1983 claims for injunctive relief against him in his official capacity.

### IV. Harris's § 1983 Claims for Monetary Damages Against Allgood in His Individual Capacity Are Barred by Allgood's Prosecutorial Immunity.

"Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction." *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967). "Prosecutors and other necessary participants in the judicial process enjoy 'quasi-judicial' immunity as well." *Johnson v. Kegans*, 870 F.2d 992, 996 (5th Cir. 1989). "The office of public prosecutor is one which must be administered with courage and independence." *Imbler v. Pachtman*, 424 U.S. 409, 423 (1976) (quoting *Pearson v. Reed*, 44 P.2d 592, 597 (Cal. 1935)). If a prosecutor were denied absolute immunity from civil suit, the mere threat of such litigation would "cause a deflection of the prosecutor's energies from his public duties" and lead him to "shade his decisions instead of exercising the independence of judgment required by his public trust." *Id*. As a result, prosecutors are shielded by absolute immunity for challenged activities that are an "integral part of the judicial process," or "intimately associated with the judicial phase of the criminal process," including the initiation of prosecution and presenting the State's case. *Id.* at 430-31. "Prosecutorial immunity applies to the prosecutor's actions . . . in carrying the case through the judicial process." *Boyd v. Biggers*, 31 F.3d 279, 285 (5th Cir. 1994).

Moreover, "[t]he prosecutor's immunity is not stripped even if he acted maliciously or in excess of his authority." *Collins v. New Orleans Police Dep't*, 247 F.3d 240 (5th Cir. 2001). "Absolute immunity shelters prosecutors even when they act 'maliciously, wantonly or negligently.'" *Rykers v. Alford*, 832 F.2d 895, 897 (5th Cir. 1987) (quoting *Morrison v. City of Baton Rouge*, 761 F.2d 242, 248 (5th Cir.1985)). "Wilful or malicious prosecutorial misconduct is egregious by definition, yet prosecutors are absolutely immune from liability for such conduct if it occurs in the exercise of their advocatory function." *Cousin v. Small*, 325 F.3d 627, 635 (5th Cir. 2003). Prosecutorial immunity is not limited to advocacy before a court, but also includes the decisions of whether and when to file criminal charges. *Quinn v. Roach*, 326 Fed. Appx. 280, 292 (5th Cir. 2009) (holding prosecutor immune for waiting fifteen months after arrest to seek an indictment).

Courts have held that state officials prosecuting civil commitment proceedings are similarly entitled to absolute immunity. *See, e.g., Scott v. Hern*, 216 F.3d 897, 908-09 (10th Cir. 2000); *Smith v. Shorstein*, 217 Fed. Appx. 877, 880 (11th Cir. 2007); *Byrne v. Kysar*, 347 F.2d 734, 736 (7th Cir. 1965). In a civil commitment proceeding, failing to fully investigate the subject's mental health, relying on unlawfully obtained medical records, and suppression of evidence are all prosecutorial functions protected by absolute immunity. *Scott*, 216 F.3d at 909. When a state prosecutor acts pursuant to a statutory obligation to conduct commitment proceedings, "she is absolutely immune from suit concerning her actions and omissions related to the fulfilment of that obligation." *Scott*, 216 F.3d at 909.

Harris has sued Allgood based on his role as the district attorney during the time of Harris's indictment, competency determinations, and initial civil commitment proceeding. All of Allgood's actions or inactions of which Harris complains occurred during Harris's criminal proceedings and

12

the resulting civil commitment proceedings ordered by the circuit court. Harris has not alleged any acts or omissions by Allgood falling outside the scope of his prosecutorial functions. As a result, all of Harris's § 1983 claims against Allgood in his individual capacity are barred by his absolute prosecutorial immunity.

      **V.     Harris Has Failed to State a Valid Malicious Prosecution Claim.**

In Count II, Harris purports to assert a claim under § 1983 for malicious prosecution, citing the elements of malicious prosecution under Mississippi law. Docket No. 5 at ¶ 61. However, in *Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003), the Fifth Circuit made clear "that 'malicious prosecution' standing alone is no violation of the United States Constitution, and that to proceed under 42 U.S.C. § 1983 such a claim must rest upon a denial of rights secured under federal and not state law." *Castellano*, 352 F.3d at 942. "[N]o such freestanding constitutional right to be free from malicious prosecution exists." *Id.* at 945. A § 1983 claim based solely on malicious prosecution is not viable, and a plaintiff's attempt to assert one "fails as a matter of law." *Cuadra v. Houston Indep. School Dist.*, 626 F.3d 808, 812-13 (5th Cir. 2010). Moreover, to the extent Harris asserts a state law claim for malicious prosecution, it must be dismissed as time-barred, as explained below. As a result, Count II of Harris's First Amended Complaint should be dismissed for failure to state a claim.

      **VI.    Harris's State Law Claims are Barred by the Mississippi Tort Claims Act Notice Requirement and the Applicable Statute of Limitations.**

The Mississippi Tort Claims Act ("MTCA") provides the exclusive remedy for any claim based in tort against a governmental entity and its employees. Miss. Code. Ann. § 11–46–7. Harris's state law claim for infliction of emotional distress against Allgood in Count IV of his First

Amended Complaint, therefore, is governed by the MTCA. Under the MTCA, to maintain a tort action against a Mississippi government entity, a plaintiff must "file a notice of claim with the chief executive officer of the governmental entity" ninety days before filing suit. Miss. Code Ann. § 11-46-11(1). "The Mississippi Supreme Court has held that the 'notice of claim requirement imposes a condition precedent on the right to maintain an action' and is a jurisdictional prerequisite." *Chestang v. Alcorn State Univ.*, 820 F.Supp.2d 772, 778 (S.D. Miss. 2011) (quoting *Gale v. Thomas*, 759 So.2d 1150, 1159 (Miss. 1999)). Here, Harris provided no notice to Allgood, so his state law emotional distress claim against Allgood cannot be sustained. *See Owens v. City of Flowood, Miss.*, Civil Action No. 3:16-CV-451-CWR-LRA, 2017 WL 368725, *2 (S.D. Miss. Jan. 23, 2017) (plaintiff was required to comply with the MTCA notice requirement for his negligent infliction of emotional distress claim); *Neyland v. Henley-Young Juvenile Justice Ctr.*, Civil Action No. 3:09-CV-520-DPJ-FKB, 2011 WL 1980276, *9 (S.D. Miss. May 20, 2011) (same).

In addition, Harris's state law claims are time barred. Actions brought under the MTCA must be filed within one year of the alleged actionable conduct. Miss. Code Ann. § 11-46-11(3)(a). To the extent the Court finds that Allgood was acting outside the course and scope of his employment for purposes of the state law claim for infliction of emotional distress, it is barred by the one-year statute of limitations prescribed by Miss. Code Ann. § 15-1-35. *See Bellum v. PCE Constructors, Inc.*, 407 F.3d 734, 741 (5th Cir. 2005) (claims under Mississippi common law for intentional infliction of emotional distress are governed by § 15-1-35) (citing *King v. Otasco, Inc.*, 861 F.2d 438, 442 (5th Cir.1988); *City of Mound Bayou v. Johnson*, 562 So.2d 1212, 1218 (Miss.1990); *Hervey v. MetLife Gen. Ins. Corp. Sys. Agency of Miss., Inc.*, 154 F.Supp.2d 909, 914–915 (S.D. Miss. 2001)). Any purported state law claim for malicious prosecution is similarly subject to § 15-1-35, and

14

accrued upon termination of the proceedings. *Atwood v. Tullos*, 312 F.Supp.3d 553, 565-66 (S.D. Miss. 2018) (claim for malicious prosecution is subject to the one-year statute of limitations under § 15-1-35, and statute begins to run at termination of the challenged proceedings) (citing *Univ. Of Miss. Med. Ctr. v. Oliver*, 235 So.3d 75, 82-83 (Miss. 2017); *City of Mound Bayou*, 562 So.2d at 1218). Allgood left the office of district attorney at the end of 2015,[3] and Harris has made no allegations against Allgood occurring after his term as district attorney concluded. In addition, according to the First Amended Complaint, Harris was released from custody on August 15, 2017, following dismissal of his criminal case. *Id.* at ¶¶ 32, 38. Because Harris filed his initial complaint in this case on September 4, 2018, Harris's state law claims are untimely and should be dismissed.

## CONCLUSION

For all of the above and foregoing reasons, Defendant Forrest Allgood, respectfully requests that all claims against him be dismissed, and that he be dismissed as a defendant in this case.

        Respectfully submitted,

        FORREST ALLGOOD, Defendant

BY:    JIM HOOD, ATTORNEY GENERAL,
          STATE OF MISSISSIPPI

BY:    /s Mary Jo Woods
          MARY JO WOODS, MSB No. 10468
          SPECIAL ASSISTANT ATTORNEY GENERAL

---

[3] *See* "Colom takes D.A. race," The Dispatch, Columbus and Starkville, Mississippi, November 3, 2015 (available online at http://www.cdispatch.com/news/article.asp?aid=45987).

Office of the Attorney General
Post Office Box 220
Jackson, Mississippi 39205
Telephone No. (601) 359-3680
Facsimile: (601) 359-2003
Email: mwood@ago.state.ms.us

## **CERTIFICATE OF SERVICE**

I, Mary Jo Woods, Special Assistant Attorney General of the State of Mississippi, do hereby certify that a true and correct copy of the foregoing document has been filed with the Clerk of the Court using the Court's ECF system, which sent notification of such filing to all counsel of record, and that a true and correct copy of the foregoing document has been served via U.S. Mail, first class, postage prepaid, upon the following non-ECF participant:

Nancy Stewart
192 Lemon Tree Circle
Union Grove, Alabama 35175

THIS the 6th day of March, 2019.

/s Mary Jo Woods
Mary Jo Woods