### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### ABERDEEN DIVISION

RACHEL HARRIS, GUARDIAN OF
STEVEN JESSIE HARRIS                                             PLAINTIFF


V.                                                        NO. 1:18CV167 M-P


CLAY COUNTY, MISSISSIPPI et al                                  DEFENDANTS


### <u>ORDER</u>

This cause comes before the court on the parties' motions *in limine* in the above-entitled

action.  Having considered the memoranda and submissions of the parties, this court is prepared

to rule.

Before ruling on the parties' motions, this court will briefly discuss the relevant motion *in

limine* standards. "The purpose of a motion *in limine* is to allow the trial court to rule in advance

of trial on the admissibility and relevance of certain forecasted evidence." *Harkness v. Bauhaus

U.S.A., Inc.*, 2015 WL 631512, at *1 (N.D. Miss. Feb. 13, 2015) (additional citations omitted). In

this context, "[e]vidence should not be excluded ... unless it is clearly inadmissible on all

potential grounds." *Id.* (quoting *Fair v. Allen*, 2011 WL 830291, at *1 (W.D. La. Mar. 3, 2011))

(emphasis added). Evidentiary rulings "should often be deferred until trial so that questions of

foundation, relevancy and potential prejudice can be resolved in proper context." Rivera v.

Salazar, 2008 WL 2966006, at *1 (S.D. Tex. July 30, 2008) (*citing Sperberg v. Goodyear Tire &

Rubber Co.,* 519 F.2d 708, 712 (6th Cir. 1975)). Moreover, the "[d]enial of a motion in limine

does not necessarily mean that all evidence contemplated by the motion will be admitted at trial.

Denial merely means that without the context of trial, the court is unable to determine whether

1

the evidence in question should be excluded." *Gonzalez v. City of Three Rivers*, 2013 WL

1150003, at *1 (S.D. Tex. Feb. 8, 2013) (quoting *Hawthorne Partners v. AT&T Tech., Inc.,* 831

F.Supp. 1398, 1400 (N.D. Ill. 1993); *Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S.Ct. 460,

83 L.Ed.2d 443 (1984)).

 This Court has previously emphasized that "[t]he purpose of motions *in limine* is not to

re-iterate matters which are set forth elsewhere in the Rules of Civil Procedure or Rules of

Evidence, but, rather, to identify specific issues which are likely to arise at trial, and which, due

to their complexity or potentially prejudicial nature, are best addressed in the context of a motion

*in limine*." *Maggette v. BL Development Corp.*, 2011 WL 2134578, at *4 (N.D. Miss. May 21,

2011) (emphasis in original); *see also Estate of Wilson v. Mariner Health Care, Inc*., 2008 WL

5255819, at *1 (N.D. Miss. Dec. 16, 2008) ("[M]otions *in limine* should be narrowly tailored to

address issues which will likely arise at trial and which require a pre-trial ruling due to their

complexity and/or the possibility of prejudice if raised in a contemporaneous objection."").

Additionally, a motion "set[ting] forth a lengthy laundry list of matters, most of them of a highly

vague nature ... constitutes an improper 'shotgun' motion which fails to meet this court's

standards for motions *in limine*." *Estate of Wilson*, 2008 WL 5255819, at *1.

 With these standards in mind, this court will first consider plaintiff's motions *in limine*.


**Plaintiff's motion *in limine* 1-2**


 Plaintiff's first two motions *in limine* seek to preclude the jury from hearing evidence

regarding the nature of the charges faced by Harris in this case and the "facts related to the

incident" which led to his arrest.  These motions involve similar considerations, and this court

will accordingly address them together. This court will consider any specific objections to a particular piece of evidence at trial, but, as a general matter, it concludes that the "probative value" versus "prejudicial effect" balancing test set forth in FRE 403 supports defendants being allowed to inform the jury of the specific charges for which Harris was indicted but that they should be prohibited from mentioning the details of the alleged actions giving rise to the crimes with which he was charged.[1]

In so ruling, this court concludes that the nature of the charges against Harris is simply too crucial and fundamental a fact in this case to keep completely hidden from the jurors. In so stating, this court notes its belief that the nature of these charges is among the first things that jurors will want to know about this case, and it believes that they would view the trial proceedings with suspicion if this fact were to be hidden from them. The trial in this matter will be a lengthy one, and this court will be asking jurors to give up a considerable amount of their time in order to decide the issues in this case. That being the case, this court believes that jurors would react with a great deal of suspicion if it were to hide such a central fact of the case from them, since they will know that Harris was charged with *something* and they will, no doubt, want to know whether he was accused of shoplifting, murder, or something in between. This court does not regard a mindset of suspicion and mistrust of the proceedings as one which would promote a reliable fact-finding process by the jurors.

The jurors' attitude aside, the nature of the charges is, in the court's view, directly relevant to some of the findings which they will be asked to make in this case. For example, plaintiff seeks punitive damages against the individual defendants, and the Supreme Court has

---

[1] This court already previewed its ruling on this issue in its summary judgment order, *id.* at 66-67, and it should accordingly not come as a surprise to either side.

held that the relevant inquiry in this context is whether the defendant acted with "evil motive or intent" or "reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 33 (1983). In defending themselves against plaintiff's claim for punitive damages, it seems essential that defendants be allowed to argue that they acted not based on "evil motive or intent," but, rather, a good faith desire to protect the public. Indeed, this court believes that defendants have potentially strong jury arguments in this regard, and the fact that Harris was charged with violent crimes which endangered the public clearly tends to assist them in asserting this argument. Having said that, this court notes that, in light of the proof that defendants may have lied to a court to deprive Harris of his due process rights, plaintiff appears to have a potentially strong argument that they acted with "reckless or callous indifference to [Harris'] federally protected rights." This court intends to allow both sides to present their arguments in this regard, and it is thus essential that jurors be informed regarding the full factual and legal context of this case.

Punitive damages aside, plaintiff also asserts claims against Clay County based upon her allegation that Sheriff Huffman, in his role as "final policymaker" for the County, violated Harris' Fourteenth Amendment rights by participating in his forced medication. In this vein, this court noted in its summary judgment order that "[i]n his response to the County's motion for summary judgment, plaintiff fails to respond to its citation of *Washington v. Harper*, 494 U.S. 210, 227 (1990), for the proposition that '[w]e hold that, given the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest.' " [Slip op. at 53-54]. It is thus apparent that whether an inmate is "dangerous to others" is a relevant factor in the *Washington v.*

*Harper* standard, and this clearly gives relevance to the fact that Harris was charged with crimes of violence in this case.

While this court thus concludes that defendants should be allowed to inform jurors of the specific charges for which Harris was indicted, it intends to instruct them, in no uncertain terms, regarding the presumption of innocence which he enjoyed. While this court acknowledges the possibility that jurors will disregard these instructions, it emphasizes, once again, that completely barring defendants from introducing this evidence would seriously hinder their ability to defend themselves against the claims against them. This court's conclusion in this regard is strengthened by the fact that plaintiff has failed to cite any authority forbidding the admission of such evidence, even though it seems quite likely that this issue has arisen in other wrongful imprisonment cases. This court accordingly concludes that the Rule 403 balancing test supports defendants being allowed to present evidence regarding the specific criminal offenses for which Harris was indicted but that they should not be allowed to discuss the details of his actions in allegedly committing these crimes.

### Plaintiff's motion *in limine* 3

Plaintiff's third motion *in limine* seeks to preclude defendant from "mentioning, eliciting testimony, or providing evidence regarding any prior convictions of Mr. Harris, as such evidence is improper character evidence as such evidence would be related to crimes older than 10 years, and would be highly prejudicial [towards] Mr. Harris." In opposing this motion, defendants write that:

> [T]he Clay County Defendants and Attorneys seek to introduce evidence of Mr.Harris's previous criminal record and convictions to undermine Mr. Harris's claims for mental

anguish or emotional distress damages, the only type of damages Mr. Harris has alleged here. Indeed, the Fifth Circuit has held that "mental anguish may be much less for the recidivist than for one incarcerated for the first time." The Clay County Defendants and their attorneys must be allowed to refer to Mr. Harris's previous convictions as part of their dispute of his alleged damages.

[Brief at 12].

In support of this argument, defendants cite the Fifth Circuit's 1975 decision in *Bryan v. Jones*, 519 F.2d 44 (5th Cir. 1975), on reh'g, 530 F.2d 1210 (5th Cir. 1976), where the court held that:

> The court's charge to the jury instructed it to award damages for physical and mental suffering. Bryan was allowed to adduce proof of the adverse conditions under which he was confined. The parties should have been given an opportunity to develop all factual elements which related to damages. One such element is the suffering caused by the very fact of incarceration, absent any issue concerning the condition of or reason for such incarceration. Even a minimal sort of penal confinement may be debilitating to many. Under comparable conditions of confinement, however, this mental anguish may be much less for the recidivist than for one incarcerated for the first time. *See Ford v. Wells*, 347 F.Supp. 1026, 1030 (E.D.Tenn.1972); *Alamo Downs v. Briggs*, 106 S.W.2d 733, 738 (Tex.Civ.App.1973). Therefore, the fact of prior imprisonment is a consideration to the extent of mental suffering occasioned by the wrongful confinement. Accordingly, this cause must be remanded so that the damage issue may be tried anew.

*Bryan*, 519 F.2d at 46.

The upshot of this 1975 decision appears to be that individuals who have been previously incarcerated are "used to" being deprived of their freedom and, that being the case, might not mind being wrongfully imprisoned quite as much as someone who had never been in jail. This interpretation of *Bryan* seems inescapable in light of the Fifth Circuit's citation to *Ford v. Wells*, where a Tennessee district court offered a pronouncement that the defendant "appears to have been arrested for public drunkenness and related crimes some 21 times before this episode; he was not as damaged by being unlawfully arrested and imprisoned as another person with an unblemished record might have been." *Ford*, 347 F. Supp. at 1030. The Tennessee court offered

6

no authority in support of what strikes this court as a very suspect conclusion, but, for better or worse, the Fifth Circuit found its analysis persuasive.

Bryan is, frankly, a surprising decision to this court, and it has some doubts whether the present Fifth Circuit would have written the same words today, based upon current understandings of the rights of criminal defendants. Nevertheless, *Bryan* does appear to represent binding Fifth Circuit authority which this court is obliged to follow, and it will accordingly grant defendants' motion to the extent that they seek to introduce evidence of "prior imprisonments" of Harris. However, since it is the fact of prior *imprisonments* which is cited as the sole issue of relevance under *Bryan*, this court will preclude defendants from eliciting testimony regarding what specific *convictions* led to any prior incarcerations Harris may have been subjected to, since this information is prejudicial in nature and has no bearing on the extent of any emotional distress sustained by him in this case. Moreover, this court will only permit defendants to make very brief arguments in support of any assertion that plaintiff was "used to" incarceration under the *Bryan* rationale and was accordingly less damaged by any wrongful imprisonment he may have suffered. In so concluding, this court is motivated by a belief that *Bryan* is a decision which the Fifth Circuit might wish to revisit, and, if that occurs, it wishes to ensure that any arguments based on the decision are limited in scope and will not be regarded as grounds for an entirely new trial.

As a final point in this context, this court notes its distinct impression that defendants would not be at all displeased if the jurors in this case reached a conclusion that Harris was a criminal and a "bad guy" and, that being the case, they should not be too concerned about any wrongful imprisonment he might have suffered in this case. In light of this impression, this court wishes to make clear that this is not the law, and it will not permit any arguments by defendants

which seek to encourage such an attitude on the part of jurors. Under this court's ruling today, it has allowed defendants 1) to introduce the specific crimes for which Harris was indicted in this case, without going into the outrageous specifics of his alleged actions and 2) to introduce proof of prior incarcerations he might have suffered. This court has explained the specific and limited reasons why defendants may introduce each of these two categories of evidence, and it expects them to treat such evidence accordingly at trial. With this caveat, defendants' motion will be granted in part.

### Plaintiff's motion *in limine* 4

Plaintiff's fourth motion *in limine* seeks to preclude defendants from asserting at trial that Harris was either "crazy" or "delusional" or from using "any other similar adjectives to describe Mr. Harris' mental state or mental ability." In their response, defendants object most strongly to any limitation of their ability to refer to Harris as "delusional," and this court agrees with them that this term is simply a description of a prominent symptom of the schizophrenia from which, it is undisputed, Harris suffers. This court will accordingly not prohibit defendants from using the term "delusional" to describe Harris. This court does agree with plaintiff, however, that the term "crazy" is unnecessarily demeaning and would not assist the jurors in understanding the facts of this case. With regard to any other "similar adjectives" which might exist in this context, this court believes that the question of whether they involve medical descriptions of Harris' symptoms or, rather, demeaning and unhelpful insults should be the line of demarcation as it relates to admissibility. This court trusts that counsel for defendants are capable of using good

judgment in this context and, when in doubt, they may request a sidebar to obtain guidance from this court prior to using a particular adjective to describe Harris.

This court now turns to defendants' motions *in limine*, which they submitted in two separate batches. The second batch was submitted after this court showed leniency to plaintiff for failing to timely file her motions *in limine*, and it concludes that defendants should similarly be allowed to submit additional motions out of time.

**DEFENDANTS' FIRST SET OF MOTIONS *IN LIMINE***

**Defendants' motion *in limine* A-1**

Defendants' first motion *in limine* from their initial batch of such motions seeks to preclude plaintiff from "us[ing] a racially motivated line of questioning before the jury or refer to recent nationally publicized events involving law enforcement and race." This is a very broadly worded motion *in limine*, but, as a general matter, this court agrees with defendants that the jurors will be asked to decide this case on its own merits, and, that being the case, there is no apparent relevance to what police officers or deputies may have done in other cases. Plaintiff is accordingly directed to focus her jury arguments on the facts of this case and not to use the trial as a forum to discuss other cases or to flesh out broad societal issues of race, discrimination, or other similar issues.

**Defendants' motion *in limine* A-2**

Defendants' second motion *in limine* from their initial batch of such motions seeks to preclude plaintiff from "using or referring to any newspaper articles mentioning or discussing this case because newspaper articles are classic hearsay." In her response, plaintiff concedes that she may not use the contents of any newspaper articles to prove the truth of the matter asserted, and she accordingly concedes the motion *in limine* to this extent. However, plaintiff argues, and this court agrees, that nothing in the hearsay rule prevents newspaper articles from being referenced before the jury for other reasons than to prove the truth of the matter asserted. For example, a newspaper article written by Jerry Mitchell played a prominent role in bringing about Harris' release in this case, and this court does not believe that any reference to this fact would run afoul of the hearsay rule. This court further believes that the article's existence is a crucial fact in this case which cannot simply be ignored. This court does agree with defendants, however, that there is a high risk that the article's contents could be considered by a jury for the truth of the matter asserted, and it will therefore preclude plaintiff from submitting the Mitchell article or reading its contents to the jury. Moreover, any references to the article should be very limited in scope, such as to note that it reported that Harris still found himself in jail without trial, eleven years after he was arrested. These are undisputed facts of this case, and, accordingly, would not be prejudicial regardless of how they are interpreted by the jury. This motion *in limine* will therefore be granted in part and denied in part.

**Defendants' motion *in limine* A-3**

10

Defendants' third motion *in limine* from their initial batch of such motions seeks to preclude plaintiff from "referring to Harris as a 'Free Man' because Judge Mills has already established that Harris was a pretrial detainee." This court has already noted its agreement with defendants on this issue, and, in her response, plaintiff concedes the issue. This motion *in limine* will therefore be granted.

### Defendants' motion *in limine* A-4

Defendants' fourth motion *in limine* from their initial batch of such motions seeks to preclude plaintiff from "referring to Harris as a 'victim' because it implies fault and would unfairly prejudice or confuse the jury." This court regards any reference to Harris as a "victim" as less objectionable than characterizing him a "free man" during the time when he was, factually speaking, incarcerated. This court does not regard the term "victim" as being particularly inflammatory, and it certainly seems arguable that, in denying Harris of his constitutional rights, defendants did, in fact, "victimize" him. This court accordingly concludes that any assertion by plaintiff that Harris was a "victim" in this case falls within the scope of permissible trial arguments, and this motion *in limine* will be denied.

### Defendants' motion *in limine* A-5

Defendants' fifth motion *in limine* from their initial batch of such motions seeks to preclude plaintiff from "offering evidence and testimony as to future anticipated medical expenses, loss of income, and loss of future services as Plaintiff has not properly disclosed what

amount in damages she is seeking in accordance with Rule 26 of the Federal Rules of Civil

Procedure." In response, plaintiff argues that:

> As set forth in *Goree v. City of Verona*, 2021 U.S. Dist. LEXIS 193955 *11-12, Plaintiff may not ask for specific damages to a jury however, it has been "held that when a plaintiff did not give a specific damages figure at any point during discovery, she could 'still introduce evidence of her emotional distress, mental anguish, and medical damages,' but she 'may not suggest to the jury a specific amount of damages.'" *citing Garcia v. Green,* 2019 U.S. Dist. LEXIS 231603, 2019 WL 8972808, at *4 (E.D. La. Jan. 11, 2019). Here, Plaintiff may still be permitted to present such evidence, however, plaintiff may not request a specific amount to the jury.

[Brief at 2-3]. This court has reviewed the *Goree* and *Garcia* decisions cited in plaintiff's brief,

and it finds them persuasive. This court accordingly directs that, consistent with these decisions,

plaintiff should not suggest a specific amount of any damages to the jury, the amount of which

she failed to disclose in discovery, but that she is not completely barred from seeking the

recovery of such damages.


### Defendants' motion *in limine* A-6


Defendants' sixth motion *in limine* from their initial batch of such motions seeks to

preclude plaintiff from "mentioning, eliciting testimony, or providing evidence of unrelated

litigation in which Clay County is a Defendant." Plaintiff concedes this motion, and it will

accordingly be granted.


### Defendants' motion *in limine* A-7


Defendants' seventh motion *in limine* from their initial batch of such motions seeks to

preclude plaintiff from "suggest[ing] any specific amount of damages to the jury." In so moving,

12

defendants argue that plaintiff "failed to itemize 'each category of [his purported] damages' in his core disclosures, nor did he do so in his written discovery responses despite a specific request to do so." This court has already noted its position on this issue, and it will accordingly grant it, to the extent that plaintiff failed to disclose estimates for particular types of damages during discovery. Plaintiff concedes as much in her brief, but she notes that she did, in fact, disclose estimates for certain types of damages, and this court agrees with her that, to this extent, she should not be precluded from suggesting a specific amount of damages to the jury. This motion *in limine* will therefore be granted in part.

### DEFENDANTS' SECOND SET OF MOTIONS *IN LIMINE*

This court now turns to defendants' second batch of motions *in limine,* which were filed, out of time, on the same day as plaintiff's motions. This court finds that these motions involve matters which defendants could and should have included in their first batch of motions *in limine*, but it will nevertheless consider them since it has demonstrated leniency to plaintiff in this regard and wishes, to the extent possible, to treat the parties equally.

### Defendants' motion *in limine* B-1

Defendants' first motion *in limine* from their second batch of such motions seeks to preclude plaintiff from "referencing, using, or relying on Clay County jail policies because they are inadmissible under the Rules 401 and 403 of the Federal Rules of Evidence." In so arguing,

defendants contend that the policies "are both irrelevant to the constitutional claims at bar and risk confusing the jury on the issues." In opposing this motion, plaintiff argues that:

> Jail Policies are neither irrelevant or prejudicial. The use of the jail policies are important to establish that Sheriffs Laddie Huffman and Eddie Scott were the final decision makers. Further, Sheriffs Laddie Huffman and Eddie Scott also have personal knowledge of these policies that the implemented, and can testify whether these relevant policies related this case were followed. Finally, Plaintiff has designated Donald Leach as their jail practices expert and he can provide testimony on whether relevant policies were followed by the Clay County jail as it relates to Mr. Harris unlawful detention and medical treatment.

[Brief at 1].

This court agrees with plaintiff that the jail policies in question are not prejudicial in nature, and they form part of the factual context of this case. This court's general policy at trial will be to grant both sides a considerable amount of leeway in presenting relevant facts to the jury, so long as they don't involve highly inflammatory facts such as the outrageous details of the crimes with which Harris was charged. As to the jail policies in question, this court will instruct the jurors regarding the elements of plaintiff's constitutional claims, and it will allow defendants to point out during closing arguments that these elements involve different considerations than whether jail policies were followed. This court is unable to agree with defendants, however, that any failure on their part to comply with their own jail's policies as it relates to Harris is a completely irrelevant fact in this case. In the court's view, any such breaches of jail policies on the part of defendants may lead jurors to conclude that they intentionally singled Harris out for special negative treatment, and it does not regard this as an irrelevant fact in deciding both liability and punitive damages issues in this case. This motion *in limine* will therefore be denied.

14

**Defendants' motion *in limine* B-2**


Defendants' second motion *in limine* from their second batch of such motions seeks to

preclude any reference to plaintiff's counsel Carlos Moore as "Judge" or "Judge Moore" based

on his status as a municipal court judge. Plaintiff concedes defendants' motion, and it will

therefore be granted.


**Defendants' motion *in limine* B-3**


Defendants' third motion *in limine* from their second batch of such motions seeks to

preclude plaintiff from referring to "Rule 12.5 of the Mississippi Rules of Criminal Procedure

("Miss. R. Crim. Pro.") before the jury at trial." In so moving, defendants argue that this is a

version of the Mississippi rules which differs in an important manner from the Mississippi

Uniform Rules of Circuit and County Court Practice Rule 9.06, pursuant to which the

competency hearing in this case was conducted. Specifically, defendants argue that:

> The Circuit Court conducted the competency hearing on October 12, 2010 pursuant to
> Mississippi Uniform Rules of Circuit and County Court Practice, Rule 9.06 ("URCCC").
> Under Rule 9.06, "[i]f before or during trial the court, of its own motion or upon motion
> of an attorney, has reasonable ground to believe that the defendant is incompetent to
> stand trial, the court shall order the defendant to submit to a mental examination . . . .
> After the examination the court shall conduct a hearing to determine if the defendant is
> competent to stand trial. Rule 9.06 further provided that "[i]f the court finds that the
> defendant is incompetent to stand trial, then the court shall commit the defendant to the
> Mississippi State Hospital or other appropriate mental health facility." This provision was
> later abrogated by Rule 12 of the Mississippi Rules of Criminal Procedure ("Miss. R.
> Crim. P."), which did not become effective until July 1, 2017.42 Though Miss. R. Crim.
> P. 12 later replaced URCCC 9.06, it materially deviated from the requirements and
> procedures previously set forth by 9.06. For one, Rule 12.5 now requires that the court
> "promptly hold a hearing to determine the defendant's competency," whereas Rule 9.06

15

had no such requirement of promptness.44 Nonetheless, Rule 9.06 controlled competency to stand trial at the time of Harris' competency hearing in 2010, not Miss. R. Crim. P. 12.

[Brief at 8-9].

Plaintiff concedes defendants' motion, and it will therefore be granted.

**Defendants' motion *in limine* B-4**

Defendants' fourth motion *in limine* from their second batch of such motions seeks to preclude plaintiff from "elicit[ing] lay witness testimony or argue that Harris would have been 'better off' if released from jail to his home or to a mental health facility before the jury at trial." In so moving, defendants argue that plaintiff has "designated no expert to testify in such regards" and that "any lay witness testimony or argument as to whether Harris would have been 'better off' at home or in the mental health system is irrelevant, would be unduly prejudicial, would confuse the issues, and would mislead the jury."

In opposing defendants' motion, plaintiff argues that:

First and foremost, Plaintiff designated Dr. Sakar Alleem, Dr. Gilbert McVaugh, Dr. Reb McMichael, Dr. Timothy Summers and Crystal Tucker, RN, as either retained or unretained psych experts, who will each be able to provide a medical opinion as to Mr. Harris' diagnosis of schizophrenia, the standard of care and proper treatment plan in treating patients with this type of mental disability, which includes the monitoring or the administration of psychotropic drugs as well as the treat plan for patients who are undergoing the effects of these psychotropic drugs. On that basis, Plaintiff will most certainly be able to present expert evidence as to best treatment plan for a patient suffering from severe schizophrenic, that is being administered psychotropic drugs. However, in this instance expert testimony would not be needed to state an obvious position, that a medical facility with medical professionals that can adequately monitor and treat patients with mental disabilities on a daily basis, or being at home where full medical care is available on a regular basis, which includes treatment from medical doctors, nurses and psychiatrists, would have been far better health, safety and welfare of Mr. Harris, rather than receiving medical inadequate treatment at a jail facility, where Mr. Harris was not permitted to have regular visits with a psychiatrist, and did not receive medical care from trained professionals skilled in treating patients with disabilities on a

regular basis, and which is not suited to afford medical treatment to patients with mental disabilities. By stating that Mr. Harris would have been better receiving treatment at a facility equipped to provide adequate medical treatment, or at home where his family can monitor him and get him the necessary medical treatment with out impediment, as Mr. Harris faced whiled unlawfully detained, would not fall within a 403 issue, and would be an obvious fact that has no prejudicial effect whatsoever. Mr. Harris is claiming emotional distress injuries, and he will have experts testify about how these options would have been better for him and as a result he suffered more than he would have had he not been unlawfully detained.

[Brief at 2-3].

If plaintiff can, as she contends, factually establish that Harris can receive better medical treatment outside of jail, then it would be within the scope of permissible argument for her counsel to contend that he would, in fact, have been better off at home or a mental health facility. In the court's view, no expert is needed to allow jurors to understand that an individual with schizophrenia would be better off with extensive treatment for his condition than with minimal treatment. Having said that, this strikes this court as being a more appropriate subject for argument by counsel than testimony by a lay witness, assuming that the factual predicate for such an argument has been laid at trial. This court will therefore tentatively allow counsel for plaintiff to argue this point at trial, in the event that a factual predicate has been laid, but it is disinclined to allow any lay witness to offer an opinion in this regard. This court is not in a position to make a final and definite ruling on this issue at this time, however, since it is unclear what lay testimony plaintiff may wish to elicit in this regard, and it is likewise unclear whether she will be able to establish a factual predicate for her arguments in this context.

**Defendants' motion *in limine* B-5**

17

Defendants' fifth motion *in limine* from their second batch of such motions seeks to preclude plaintiff from "eliciting expert testimony from Pearson Liddell, a lay witness, because he was not designated as an expert." In so moving, defendants argue that:

> Pearson Liddell was Steven Jessie Harris's criminal defense attorney for the majority of his case in front of the Clay County Circuit Court. As stated above, at no point during the pendency of this case has Mr. Liddell been identified as an expert witness. However, throughout Mr. Liddell's deposition, Plaintiff's counsel elicited improper expert testimony from Mr. Liddell. For example, Liddell gives his opinion related to the duties he owed to his client, the competency of Harris, the effect of chancery court orders, when a motion to withdraw as attorney is needed and, perhaps most importantly, his interpretation of United States Supreme Court law and its impact as to this case.

[Brief at 14-15]. Plaintiff concedes defendants' motion, and it will therefore be granted.

### Defendants' motion *in limine* B-6

Defendants' sixth motion *in limine* from their second batch of such motions seeks for this court to "issue an order (1) limiting all experts' testimony at trial to the opinions and bases; facts and data considered; and any exhibits to those set forth in such expert's written report and (2) cautioning counsel from eliciting testimony from said experts outside the information contained in the expert's written report." This court does not regard this request for such a blanket pre-trial pronouncement as complying with its previously-quoted policies regarding the proper scope of motions *in limine*, and it accordingly declines to address it at this time.

### Defendants' motion *in limine* B-7

Defendants' seventh motion *in limine* from their second batch of such motions seeks to preclude plaintiff from "offering any evidence as to what any other Defendant paid in any settlement as to that Defendants' liability in this case" since this would be in conflict with FRE 408. Plaintiff concedes defendants' motion, and it will therefore be granted.

### Defendants' motion *in limine* B-8

Defendants' eighth and final motion *in limine* from their second batch of such motions seeks to preclude plaintiff from making "any argument, reference or inference that the confinement of Steven Jesse Harris from 2005 until his October 2010 circuit court ordered commitment proceeding violated the Constitution." In so arguing, defendants write that:

> The issue here is whether the remaining Defendants are liable under the Constitution for the time that Harris spent in the Clay County jail from the Court's 2010 finding of incompetency until the 2016 civil commitment. Any argument that the 2005 -2010 period of confinement triggers a constitutional injury would be improper and any mention would prejudice the jury against Defendants. The Fifth Circuit Court of Appeals defined the issue in this case as such: "The remaining merits issue is whether Huffman and Scott are entitled to qualified immunity for jailing Harris for six years after courts had found him incompetent and dismissed the commitment case." (See Opinion at p. 9). In other words, the focus is on the order of commitment forward, not what happened prior to the circuit court finding of incompetency.

[Brief at 18].

Plaintiff concedes defendants' motion, and it will therefore be granted.

### Final observations

As a final note, this court wishes to make clear its view that both sides in this case should have a strong incentive to settle it. In so stating, this court notes that, to ultimately prevail in this matter, defendants must not only convince jurors to return a verdict in their favor, but they must

19

also convince the Fifth Circuit to let that verdict stand.  Considering that the Fifth Circuit has

expressed something approaching a categorical view that the County wrongfully imprisoned

Harris, that may be a tall order indeed.  Moreover, while plaintiff may find herself in a somewhat

more advantageous position, it seems clear that, at the end of the day, any damages which she

recovers will need to be awarded by jurors who, it seems quite possible, will view Harris'

incarceration in this case as something less than the clear-cut miscarriage of justice which she

alleges it to be.  Given the strong possibility of a disconnect between the Fifth Circuit's view of

this case and that of jurors, there appears to be a very high risk that both sides will have to incur

the expense of not only one lengthy trial, but two, along with another appeal before the Fifth

Circuit.  Considering the expense and unpredictability inherent in such proceedings, this court

believes that both sides would be well advised to resolve this case now.[2]  Barring such a

settlement, the trial in this matter will begin on March 7, 2023, based on the evidentiary rulings

set forth in this order.

 In light of the foregoing, it is ordered that the parties' motions *in limine* are granted in

part and denied in part, as set forth in this order.

 This, the 6th day of March, 2023.


 /s/ Michael P. Mills
 U.S. DISTRICT COURT
 NORTHERN DISTRICT OF MISSISSIPPI

---

[2] This court notes that, as of the writing of this order, the U.S. Supreme Court has not yet ruled on defendants' cert petition.  However, it seems clear that the issues before the Supreme Court are limited to qualified immunity issues, consistent with the limited appellate jurisdiction which exists in this context.  It should thus be emphasized that plaintiff also asserts claims against Clay County itself which would, presumably, not be impacted by the Supreme Court's eventual ruling.